HENRY GROVE, Plaintiff in Error, *v.* THE BOARD OF SCHOOL INSPECTORS OF THE CITY OF PEORIA, Defendants in Error, a Chancery proceeding, and

THE SAME *v.* THE SAME, a proceeding by *certiorari.*

#### ERROR TO PEORIA.

The School Inspectors of Peoria are authorized to district the city, as to them may seem best; and they may also establish such rules for the admission of pupils as they judge proper; and these duties will not be interfered with, except in extreme cases.

They may also sustain a school in a house outside of the city, and pay for repairs, for the use of children living within it.

THE plaintiff in error presented his bill in chancery for an injunction against the defendants in error, at the November term, A. D. 1857, of the Peoria Circuit Court.

The bill sets forth in substance, that by the Act of the General Assembly, approved Feb. 14, 1855, and by the Act approved Jan. 29, 1857, the voters of the city of Peoria were authorized to elect a Board of School Inspectors for said city of Peoria.

That under the acts aforesaid, inspectors were elected, and proceeded to organize, and took upon themselves the duties of their office.

That said board was required to perfect a good system of schools in said city.

That said board has full authority and power, and abundance of means to furnish, provide and maintain sufficient schools for all the children in said city.

That there is in said city, five large, commodious school-houses, capable of accommodating all the scholars in said city, if the board would district the city with reference to the location of the school-houses, and if said board would prevent scholars residing out of the city limits, from attending said schools.

That complainant owns lots 21 and 22 in Ashael Hale's addition to the city of Peoria, and lots 1, 2 and 22, in Coleman's subdivision of lot 20, of said Ashael Hale's addition to Peoria, all in said city of Peoria.

That he is a resident tax-payer of said city, and resides with his family in his dwelling-house on said lots 21 and 22, and has resided thereon for six years.

That his family consists of himself, his wife and two children. That the eldest of said children is over twelve and under fifteen years of age. That said child is anxious and willing to attend the public schools in the city of Peoria, under such reasonable rules as said board might prescribe.

That complainant is also anxious to send his child to said schools, but is prevented from so doing by said board.

That said child is a free white child, and complainant knows of no valid objection to her attending said schools.

That said board have so districted the city, as to locate complainant in district No. 5.

That there is no school-house within the city in district No. 5.

That said board has received, and is now instructing in said schools, several scholars who do not reside within the city.

That the school-house intended for use of district No. 5, is outside the corporation limits of the city.

That said board has fitted up, at the expense of the city, a one-story school-house, outside of the city limits, to compel scholars in that vicinity, residing in district No. 5, to attend the same.

That said board has received two scholars residing outside of the city limits, to attend said school.

That on the 11th of December, 1857, complainant presented petition for *certiorari.* That writ was allowed, issued and returned, and same is made part of bill.

That said board adopted a rule requiring each scholar to pay $1 per term, for tuition fees.

That complainant tendered amount last term and present term, but was refused.

That said board has divided the city into six districts. That in each, except No. 5, there is a good substantial school-house, fitted up with seats, maps, etc.

That complainant resides in district No. 5.

That said board has issued an order, prohibiting a scholar residing in one district from attending a school in another district, except by leave of the superintendent.

That superintendent has adopted a rule, that he will not permit scholars residing in one district from attending school in another, unless such scholar is sufficiently advanced to be admitted to a higher school.

That complainant's right to send to the public schools does not depend upon such advancement.

That said board sometimes pretend that complainant's child cannot be received in said schools, because the schools are full. That the pretense is not true. That if true, said child has rights equal with other scholars.

That if said board would discharge scholars attending said schools, residing without the city, there would be abundant room.

That school taught in second district, is most convenient for said child to attend, and most contiguous to complainant's residence. That said child did attend said school. That the City Council constructed a plank walk from said school-house to, and terminating on the bluff, in dictrict No. 5, for convenience of scholars residing therein.

That there is room in said school-house for additional seats. That complainant proposed, at his own expense, to put up seats.

That said board has no right to admit foreign scholars to said schools, to the exclusion of scholars of resident citizens, tax-payers of the city.

That said board expended five hundred and twenty-three dollars and fifty-five cents, on said school-house outside of the city limits, during the year ending August 31, 1858.

That said board intend, and threaten to expend further and larger sums on said school-house, for repairs, tuition, etc.

That said board has no right to appropriate the school funds collected out of tax-payers in the city, to keep up a school outside of the city limits.

That said board has no right to compel scholars of district No. 5, to attend said school.

That said school-house contains but one room, and is unfitted for grading the scholars therein; the number of which does not exceed thirty scholars.

That complainant has no adequate remedy at law. That complainant sued one of the teachers of said school No. 2, for refusing to receive and instruct said child.

That said suit is now pending in the Circuit Court of Peoria County, on the law side thereof, undetermined, having been brought on by an appeal from the decision of a justice of the peace.

That complainant filed his petition for a writ of *certiorari*, for the purpose of reversing, annulling and setting aside the various orders, entries and lines made by said board, on their maps, records, etc., prohibiting said child from attending said school.

That complainant has no adequate redress; as said return does not show that said board is receiving foreign scholars into said public schools, and appropriating the school funds to furnish and maintain said school outside of the city limits.

That if complainant is compelled to prosecute said board for every refusal to admit said child to school, complainant will be involved in an endless and ruinous litigation.

That complainant called personally on several members of said board, and requested them to rescind their orders, prohibiting said child from attending said school, which they refused to do.

That the acts and doings of said board are intended to vex, harrass and aggrieve complainant.

The answers admit passage of acts, and organization of board. Insist that said board have powers of trustees of schools within township, and have organized as such. There are no directors in district five outside of the city, and that part of district five outside of city cannot be attached to any other district.

Admit their duty to provide schools for all scholars in the city, but deny that they have sufficient means for that purpose.

That there are 4,000 children in the city, and only have accommodations for 1,150, and submit they have done all they can do.

Admit report to be true.

Admit that there are five school-houses, one in each of the first, second, third, fourth, and sixth districts, but that they would not hold all if fifth district was admitted.

Admit that complainant owns the property and has the right to send, but deny that he has been prevented from sending to the public schools in said city.

Admit that complainant has been prevented from sending out of his district unless with permission of superintendent.

Admit there is no school-house in district five within the city.

Admit that complainant owned stock in third district, and that he consented to sell with the understanding that the house would be used for the benefit of children within the city, and insists that he was not disappointed.

Admit that the only school-house for district five is outside of city, and that two scholars attend from outside.   That it is one story high.

Deny that school-house has been fitted up at expense of taxpayers of city.   Deny that school is kept therein to compel complainant to send there, but that the school is kept there to accommodate scholars in said district.

That prior to act of 1855, district five had built the schoolhouse, had elected directors, voted a tax—house cost $1,200 —and kept a school therein.   In March, 1856, one Smith applied to board to keep a school in said house, which was done, and defendants have kept school therein under same regulations as other schools.   Said school-house stands one hundred feet outside of city limits, and scholars outside pay $2.50 per scholar per term, and those inside $1.00 per term; and said house is convenient to complainant.   That most all the inhabitants of district five desire school to continue, and refer to return made to writ of *certiorari*.

Complainant never has been prevented from sending to said school in No. 5.

Admit issuing of writ and return thereto.

Admit that complainant offered to pay the tuition for second district only.

Admit division of city into six districts, and that in each there is a school-house except in No. 5.

Answers insist that they are not confined to city limits in location of school-houses.

They intend to continue said school, and support it out of public funds in their hands.

Said school-house is a small one and not so well calculated to grade the school; but inconvenience is remedied by power vested in superintendent to allow advanced scholars to attend schools in other districts when he thinks best, which discretion has been and will continue to be wisely exercised.

Do not admit having prohibited complainant from sending his child to the public schools in the city, but in districting the city they have prevented him from sending to the second district.

Know of no rule of superintendent prohibiting a scholar in one district from attending school in another only when sufficiently advanced, except in case of high school.

Learn from superintendent that complainant might have sent

to fourth or sixth district if he had applied during first three days, those schools then not being full.

No persons residing in the city excluded from the schools by reason of the admission of scholars out of the city.

When schools in the city are not full, scholars from outside are admitted on paying $3.50 per term.

That of scholars attending the schools in the city and who reside outside of the city, three attend in third district, five in fourth district, two in fifth district, six in sixth district—sixteen in all.

All the schools in the city are graded.

School in fifth district will seat forty scholars, and not adapted to a graded school. Average attendance about thirty.

Complainant filed replication.

The court refused to grant an injunction and dismissed the bill, and complainant excepted.

The plaintiff in error assigns the following errors upon the record :

The court below erred in overruling the plaintiff's motion for a new trial.

The court erred in dismissing the bill, and in refusing to allow an injunction as prayed in the bill.

The petition and proceedings upon the *certiorari* are as follows :

The plaintiff in error sued out of the Circuit Court of Peoria county a writ of *certiorari*, directed to the Board of School Inspectors of the city of Peoria. The writ followed the petition in substance.

The petition was as follows :

To the Hon. Elihu N. Powell, Judge of the Circuit Court of Peoria county, in the State of Illinois :—

Your Petitioner, Henry Grove, of the city and county of Peoria, and State of Illinois, respectfully represents that he is now, and for the six years last past has been a citizen, a resident householder and tax-payer in the said city of Peoria ; that he is the owner of lots twenty-one and twenty-two in Ashael Hale's addition to the city of Peoria, in said city, with the improvements thereon. That he has a family, consisting of a wife and two children ; that he, with his said family, has resided on said lots during the said six years last past; that he and his said children are free white inhabitants of the United States of America, and were all born within the United States. That the eldest of his children, named Clara Priscilla Grove, is now over twelve years of age, and less than fifteen years. That he desires

35

538 OTTAWA,

Grove *v.* School Inspectors of Peoria. Same *v.* Same.

to educate his said child, and claims the legal and moral right to send his child to the public schools in said city of Peoria. That said Clara Priscilla Grove is also desirous and wishes to attend said public schools in said city of Peoria, but is now and has been prevented and hindered from so doing by the direction, order and action of the Board of School Inspectors in the city of Peoria.

He further states, that to the best of his knowledge, information and belief, he knows of no legal, valid or moral objection to his said child attending and receiving instruction in the public schools in said city of Peoria.

He further states, that some months since, as he is informed and verily believes, the Board of School Inspectors in the city of Peoria, passed an order, direction, resolve or decree, and spread the same on the maps, plats and records of their proceedings, forbidding and prohibiting your petitioner from sending his said child to the public schools in said city of Peoria. That the name of your petitioner and of his said child is not probably mentioned in said order; but the premises in which your petitioner resides, is marked on said record and map as being excluded from any and all the several school districts in said city.

That your petitioner has sent his said child to one of the public schools in said city, since the passage of said order, and requested admittance to said public schools, in said city; she was prohibited by the teachers, under said order, from entering or receiving instruction in said school.

He further states, that he cannot state the precise terms of said order, nor of the marks on their said maps or plats, but he states, that said orders, and the entry on said maps or plats so made by said Peoria School Inspectors, is unjust, oppressive, illegal, tyrannical, irregular and beyond the jurisdiction of said Board of School Inspectors.

That in the adoption and passage of said order, said Board of School Inspectors, as he verily believes, exceeded their lawful power and jurisdiction, and thereby excluded his said child from said schools.

He further states, that so far as his knowledge extends, the law does not provide for an appeal from said order, and he has no remedy to have the same set aside, cancelled or reversed, except by the order of your Honor to allow a writ of *certiorari* to be issued in due form of law, directed to said school inspectors, directing and commanding them to certify and bring the said record of their proceedings in that behalf, and their said marks and lines on their said maps and plats, before the Honor-

able the Circuit Court of Peoria county, that said order and entries may be reversed, set aside, and wholly for naught esteemed; which he prays may be granted.

To this writ the defendants made return,

1. That the board had adopted a rule that a scholar residing in one district, shall not attend a school in any other district, without authority from the superintendent.

2. That one Ira Smith, from the fifth district, had presented a petition praying that the board might maintain a school outside of the city limits, for the accommodation of the scholars in the fifth district, which was done, the school established, and a teacher employed.

3. Giving boundaries of districts, accompanied by a map with districts and boundaries marked.

4. Showing that there is no school-house in the fifth district, being the district in which petitioner resides.

On the filing of the return, the petitioner entered a motion, That the court order, direct and decree that all the entries, marks, lines or records made, rendered or placed by the defendants on their records, books, maps, or plats, prohibiting petitioner from sending his child to the public schools in said city of Peoria, be reversed, set aside, cancelled and wholly for naught esteemed. And that the court vacate, reserve, set aside and cancel all orders, entries, marks, or lines made by said defendants in their records, maps or plats, compelling him to send his child outside of the city limits.

The court overruled the motion and dismissed the petition, and plaintiff excepted.

The plaintiff now assigns the following errors upon the record :

1. The court erred in overruling the motion of the plaintiff.

2. The court erred in dismissing the petition.

3. The court should have sustained the motion made by plaintiff below.

H. GROVE, in proper person.

J. K. COOPER, for Defendants in Error.

BREESE, J. The scope and prayer of the bill in this case is threefold. The complainant prays,

*First,* That the Board of School Inspectors be enjoined from receiving into the public schools of the city of Peoria, scholars not resident within the city limits, to the exclusion of the child of the complainant, who is such resident.

*Second,* That they be restrained from preventing and hinder-

ing the complainant from sending his child to the public schools in the city, and receiving instruction therein.

*Third,* That they be restrained from using and appropriating any of the moneys raised and received by them out of the taxes, or credit or moneys of the tax-payers of the city of Peoria, for school purposes, to the repairs or furnishing the school-house outside of the corporate limits of that city, or to maintain or support a school therein.

As to the first proposition, it does not appear that the board have, at any time, received into the public schools of the city, scholars residing or belonging outside of the city limits, to the exclusion of complainant's child.   The answer, which is under oath, denies it expressly, and no witness establishes the fact.

Gilbert Voodry, one of the witnesses for complainant, does not so state, nor does Mr. Gale.   Voodry says, he went to the office of the board on the morning of the first day of the Fall term, 1857, of the public schools, at the request of complainant, to procure a ticket of admission for his daughter, and that he did, in the presence of Amos P. Bartlett, and John Hamlin, the treasurer of the board, offer to pay the treasurer one dollar, the tuition fee for the term, and for her admission to the second district school.   This is all the testimony to that point.

The answer goes fully into the reasons governing the board in districting the city for school purposes, and for establishing rules and regulations to govern them.   The application of complainant was special—for the admission of his daughter into the school in the second district, she living in the fifth, as the case shows.   The answer discloses the fact that no non-resident scholars had been admitted into that school—that it had its complement of pupils, and no place for complainant's daughter could be made, except at the expense of some other pupil. The fact that complainant proposed to furnish her seat and desk at his own expense could not have any weight against the system of rules and regulations the board had adopted, as to seating the room.   They were the judges as to how many desks and seats were proper in the room, and if the school was full, allowing the complainant to add to the complement, merely because he was willing to provide a desk, would be to repeal their rules, and be a license for any other person outside of, or inside the district, to do the same thing, the consequence of which might be, as the board could well foresee, the school in this favorite district would be filled to overflowing, while others might be empty, or but partially filled.   Every authority like this, having a trust so great committed to it, must have a system of wise and salutary rules, and as inflexible as circumstances will allow.

Mr. Gale states in his deposition, that at the term to which complainant made his application, " the second district school was full, and more than twelve, residing in that district, were compelled to attend in other districts." It would then have been a gross departure, had the board, under such circumstances, admitted the complainant's child into this school. The case shows that non-resident scholars have, at no time, been admitted into the city schools, except in the fourth, fifth and sixth districts, neither of the schools therein being full.

The second proposition is disposed of as the first, by the answer and the evidence, the one denying, and the other fortifying it, that at no time has the board refused the complainant's child a place in the public schools of the city, and receiving instruction therein. The answer shows she could have gone to either the fourth or sixth district school. But the proposition embraces more than this, and goes to the power of the board so to exercise the discretion with which they are endowed, as to district the city in such mode and form as to them may seem best.

The great complaint seems to be, that the school districts are so established by the board, as to make it necessary, if complainant's child attends the school in the proper district—the fifth—she will be compelled to occupy a small room roughly furnished, and with pupils with whom she cannot be classed, she being greatly advanced beyond those attending the fifth district school.

The power of the board of inspectors over this branch of their duties is plenary. Laws of 1855, page 197, sec. 4. By clause seven of section four, they have power " to lay off and divide the city into school districts, and from time to time, to alter the same or create new ones as circumstances may require." As they are elected by the qualified voters of the city, it is reasonable to expect, in the exercise of this power, they will feel their responsibility to them, and so act as to give general satisfaction. It is a very difficult duty to perform, and it is not reasonable to expect, however just, wise and impartial they may be, that there will be no single complaint. It requires much deliberation and the exercise of sound judgment, and in such case, a court could not well interfere unless gross injustice had been done, or the marks of corruption in the board so evident as to compel the court to interpose. Nothing of this kind is alleged or proved, and we must remit the whole subject of the districts, and the lines by which they are bounded, to the electors of the city, who will, doubtless, if injustice has been done any considerable portion of the city, or partiality shown,

or oppression attempted, effect a change by a change in the board of inspectors at the next election.

The power of the board to establish rules and regulations for the admission of pupils, is found in clause eight of section four, and by a compliance with those rules, the complainant's child could have been admitted into the school in the fourth or sixth district, at the option of complainant.

The last proposition involves the consideration of the authority of the board to sustain a school for the fifth district in a house outside of the city limits, and expending money in its repairs.

This is a part of the discretionary power with which the board is clothed. By the first clause of section four they have power to erect, hire or purchase buildings for school-houses, and keep the same in repair. By the eighth clause they are empowered to establish, support and maintain public schools for all the children of the city.

When it is considered that a new, and we may say, noble system of public education was being inaugurated in one of our infant but rapidly increasing cities, it must be very apparent that it would be the work of years before the necessary buildings could be erected and furnished adapted to such purpose. Whilst these were in process of erection, many of the children of the city would be rapidly advancing beyond the age at which instruction is most readily imparted to them, especially the elementary branches. It would not then, in view of this consideration, and the object being to educate all the children of the city, and power given to erect, hire or purchase buildings for school-houses, be in our judgment at the commencement of such a noble system, any violation of duty or usurpation of authority, to hire a school-house in which a portion of the children could be educated, even though the building might not be within the corporate limits. The facts show that the inhabitants of this district had built and fitted up this house expressly for school purposes at their own cost. They had placed it at the place most convenient to those requiring schooling, and who otherwise might be greatly incommoded by going elsewhere. The house was built, was suitable for the purpose, and was a convenient auxiliary to the design of the board, and to discharge their duty to provide educational facilities "for all the children of the city." It cannot be a grave matter that the building is a few feet without the city limits. For aught that appears, it is convenient and accessible to a majority of the residents in the fifth district. By accepting the use of this house, and keeping a school in it, quite a large population are accommodated and the original grand design carried out. As

the board has the power to erect or hire buildings, for the purpose of educating all the children of the city, we cannot doubt they had the power to accept the use of this building for the same purpose, and appropriate money to its repair.

The school kept in it is a public school of the city, to all intents and purposes, under any fair construction of the law. It is under the charge and control of the board, is subject to all the rules and regulations established by the board, common to the entire system, and should be supported out of the fund provided for the general purposes of the system. We think the eleventh clause of section four protects the action of the board.

It is contended the board should have prepared the way for levying a tax in the mode provided in the eighth section, for the purpose of building a school-house for the fifth district within the city limits.

This duty must be performed by the board, but it must rest with them to determine, under all the circumstances, what is necessary for the accommodation of the several districts, or for the support of public schools, whether buildings or whatever it may be. The board have, necessarily, the discretion to determine this, and with their determination, apart from any oppression, corruption, or act of gross injustice, this court could not interfere.

It is certainly matter of rejoicing, that in the infancy of this system so much has already been done. In less than three years edifices have been reared capable of supplying the wants of a city of more than twenty thousand inhabitants, well provided in every respect, and with competent teachers, by taxes voluntarily imposed by the people themselves. It is one of the great ornaments of our noble State, and the benefits resulting from it will be felt throughout its whole extent.

We cannot see wherein the court erred in refusing the injunction and dismissing the bill. We cannot discover any good ground for complaint properly traceable to the action of the board of inspectors. They have done their duty, and nothing but their duty, so far as we can discover, and we therefore affirm the judgment of the Circuit Court.

SAME
*v.*
THE SAME. } On *certiorari.*

All the questions arising in this case have been fully considered in the chancery cause between the same parties. The judgment is accordingly affirmed.

*Judgment affirmed.*