(No. 13923.—Reversed and remanded.)
ALVIN FISHER et al. Appellants, vs. SIMON G. BIRKEY
et al. Appellees.

*Opinion filed October 22, 1921.*

1. SCHOOLS—*object of provisions of School law for changing boundaries of districts.* The object of the provisions of the School law giving township trustees power to change the boundaries of districts and to form new districts out of territory of other districts when properly petitioned for, is to give effect to the wishes and convenience of a majority of the inhabitants of the township or townships, and the trustees, and the superintendent of schools on appeal, should exercise their discretion in accordance with the wishes and convenience of a majority of the inhabitants affected.

2. SAME—*when equity may set aside decision changing boundaries of districts.* Where the action of the township trustees or of the county superintendent in changing the boundaries of school districts is clearly shown to be so unreasonable and unjust as to amount to oppression and a wanton disregard of the rights and interests of the complainants, a court of equity will set aside such action and grant such other relief as is necessary and proper.

3. SAME—*county superintendent acts in ministerial capacity in deciding question of new school district.* The county superintendent of schools, in deciding the question of the organization of a new school district on appeal from the decision of the township trustees, does not act in a judicial or legislative capacity but merely acts in his ministerial capacity.

4. INJUNCTION—*invalidity of statute will not, alone, justify relief by injunction.* To justify relief by injunction it must appear that the complainants have no remedy at law or that the matters fall under some recognized head of equity jurisdiction, and the mere fact that a certain statute which purports to authorize the acts complained of may be unconstitutional does not entitle the complainants to relief by injunction.

APPEAL from the Circuit Court of Tazewell county; the Hon. CHARLES V. MILES, Judge, presiding.

JESSE BLACK, JR., for appellants.

SMITH & SMITH, (W. J. REARDON, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Alvin Fisher, Amos Sutter, Jacob Appenseller, A. B. Kennell and P. J. Hallstein, Jr., in their individual capacity, and P. J. Hallstein, Jr., A. B. Kennell and Ben Springer as school directors of school district No. 11 in Tazewell county, Illinois, filed their bill in the circuit court of said county against Simon G. Birkey, Louis Litwiller and Dan B. Naffziger, as school directors of school district No. 118 in said county, and T. E. Soltermann, county clerk of said county, to set aside and declare void a certain order of C. I. Martin, county superintendent of schools of the said county, granting the prayer of certain petitioners to establish school district No. 118; to permanently restrain and enjoin the defendant directors and their successors from issuing bonds for said district for any purpose; from purchasing or paying for a school house site and contracting for or erecting a school house thereon; from levying taxes of any kind for any purpose for said district; and to permanently restrain and enjoin the county clerk from extending any taxes against any property within the district for school purposes for said district. The court sustained a demurrer to the bill by the defendants and entered a decree dismissing the bill for want of equity. The complainants in the bill have perfected their appeal to this court.

Alvin Fisher and Amos Sutter are land owners, residents and tax-payers in school district No. 24 aforesaid; Jacob Appenseller is a land owner and tax-payer in school district No. 2 in said county; A. B. Kennell, P. J. Hallstein, Jr., and Ben Springer are tax-payers, residents and voters in school district No. 11 in said county and also school directors in that district. Fisher owns the northeast quarter of section 12, township 22, north, range 3, west of the third principal meridian, the north 80 acres of which are in district No. 118. Sutter owns 120 acres in district No. 118. Appenseller owns 160 acres in district No. 2. Other facts stated in the petition are the following:

Petitions for the formation of a new district, identical in form and substance, were presented to each of the boards of trustees in township 23, north, range 2, west; township 23, north, range 3, west; township 22, north, range 2, west, and township 22, north, range 3, west of the third principal meridian, at their regular April meetings in 1920 and were rejected by every one of the boards. The petitions appear to have been in accordance with the provisions of the statute for the formation of school districts from parts of two or more townships and school districts, under sections 46, 47, 52, 55 and 56 of the School act. The petitions were signed by at least two-thirds of the legal voters within the proposed new district, which contained not less than ten families. An appeal was taken in accordance with the provisions of said sections of the statute to the county superintendent of schools of said county. After hearing the appeal the county superintendent decided that an allowance of the new district would be for the best interests of the districts and of the inhabitants thereof and reversed the action of the trustees and granted the prayer of the petition. The school districts affected by the granting of this new district, which is district No. 118 in said county, are school districts Nos. 11, 35, 24 and 2 in said county, all of which corner with the common corner of said four townships. School district No. 11 would be rectangular in form if the southeast quarter of section 21, township 23, north, range 2, west, were added to it, and would be two and one-half miles wide north and south and three miles long east and west, as it existed before the change by the new district, and had 4640 acres of land. It now has 3680 acres. School district No. 35 before the change was a rectangle in form, and was one and one-half miles wide north and south and three miles long east and west and contained 2880 acres of land. It now has 2400 acres. School district No. 24 before the change was practically three miles long north and south by two

miles wide east and west and contained 3600 acres of land. It now has 2720 acres. School district No. 2 before the change was two miles square and contained 2560 acres of land. It now has 2470 acres. These four school districts had their school houses located at or very near their centers and were easily reached by all the school children within their borders by good roads. On the following plat the outlines of the new district are indicated by solid lines and those of the old districts by dotted lines:

School District No. 118, as will be seen by the above plat, presents a very unusual figure and broken outline. On the line between the two north townships and the two south townships it has a width of four and one-quarter miles, and on the township line between the two east and the two west townships it has a length, north and south, of two and three-fourths miles. The east three-fourths of a mile, the north one-fourth mile and the west one-half mile of

this district are only one-fourth of a mile in width. The school house site is very near the common corner of the four townships. This new district only takes a strip thirty rods long north and south by one and one-half miles in width east and west off of district No. 2. It requires about two pages of printed matter to describe this district by metes and bounds, but the five districts are correctly and accurately shown by the foregoing plat and further description will not be necessary. District No. 11 had not to exceed thirty children of school age before the change, district No. 35 had not to exceed twenty children of school age before the change, district No. 24 had not to exceed thirty children of school age before the change, and district No. 2 had not to exceed twenty children of school age before the change. School district No. 118 has not to exceed twelve children of school age and obtained four of these from district No. 11, none from district No. 35, four from district No. 24 and four from district No. 2. Within fifteen days after the establishment of district No. 118 an election was called and held therein, and the board of directors for that district were elected and thereafter called an election for voting upon and selecting a school house site and for building thereon a school house and paying for the same, and it was located as aforesaid. The school house has not been built and no bonds have been issued or sold for the purchase of the site or for building a school house. No school was being conducted in the district, but it is alleged that the school directors are acting as such and threatening to incur expenses for all of said purposes.

The claim of appellants and the charge in their bill is that it is the policy, as expressed in our School act, that all school districts should be composed of contiguous and compact territory and that the school district established by the county superintendent of schools is not composed of such territory but is so irregular and unjust in its outline as to create a geographical monstrosity; that if it be

allowed to stand the other four school districts will not be composed of compact and contiguous territory, and that the tax-payers of said school districts and the complainants will suffer irreparable injury; that the act of the county superintendent of schools in overruling the several boards of trustees in said townships and establishing the school district was so unreasonable, unjust and oppressive and such a gross and wanton exercise of authority and abuse of discretionary power as to amount to a fraud upon the people of the several districts and the complainants, and that the action of the county superintendent for those reasons ought to be set aside and declared void. It was also charged that the sections of the statute authorizing the organization of such school districts and providing for an appeal to the county superintendent of schools and the making of his decision final are unconstitutional and void, because there is no provision for a hearing on appeal by any competent court or judicial body, and because they impose judicial and legislative duties upon an officer whose duty is purely executive and endow him with excessive legislative and judicial authority.

The object and intention of said sections of the School law, as this court has frequently held, are to empower township trustees to form new districts and to change the boundaries of districts, in their discretion, when properly petitioned, to suit the wishes and convenience of a majority of the inhabitants of the township or townships, and authority and power are vested in the county superintendent of schools to use a like discretion in affirming or overruling the trustees when an appeal has been taken to him. In all such cases the trustees and the superintendent of schools should exercise their discretion and power in accordance with the wishes and convenience of a majority of the inhabitants affected by their acts. No district or districts have a vested right in the division of a township or townships as originally made, nor the right to insist that the

boundaries of a school district shall remain for all time as originally fixed. Changes in population or conditions in townships often necessitate changes in the boundaries of school districts in order that all the inhabitants may have the benefit of good and convenient schools within easy reach of the children that are to attend them. Changes in the boundaries of school districts cannot at all times be made to give equal opportunities and the same convenience to all the inhabitants affected by such changes, and where it appears from such changes that the wishes and convenience of a majority of the inhabitants of the district are served and the other parties affected are not greatly inconvenienced or oppressed or outraged by the change, a court of equity cannot interfere, by way of injunction, to set aside and declare void the action of the trustees or of the county superintendent. Where, however, the action of the trustees or of the county superintendent is clearly shown to be so unreasonable and unjust to those complaining as to amount to oppression and a wanton disregard of their rights and interests, then a court of equity will interfere to set aside such unjust and oppressive decision and grant such other relief as may be necessary and proper. *Thompson* v. *Beaver,* 63 Ill. 353; *Metz* v. *Anderson,* 23 id. 410; *School Directors* v. *Trustees of Schools,* 66 id. 247; *Hawes* v. *City of Chicago,* 158 id. 653; *Trustees of Schools* v. *School Directors,* 190 id. 390.

A mere inspection of the above plat of the five school districts in question is sufficient to convince anyone, we think, that the best interests of the inhabitants of the districts were not considered or seriously regarded either by the petitioners who petitioned for a new district or by the county superintendent of schools who ignored the action of the four boards of trustees and allowed the formation of the new district. The object of the petitioners in petitioning for such an ill-shaped, ungainly and inconvenient district must necessarily have been to serve their own selfish

purposes, without regard for the rights of the owners of land and inhabitants in the parts of the district most remote from the school site therein and the inhabitants of the other districts. The purpose in forming this territory into a new district, as is manifest from the allegations of the bill, was to secure territory that could be taxed for the purposes of the district and at the same time avoid taking in resident owners of land who would oppose its organization. This is made manifest by the fact that the new district takes 480 acres of land from district No. 35 without taking any children of school age therefrom. It takes 80 acres of Fisher's land and 120 of Sutter's land that was in district No. 24 and still leaves them residents of district No. 24 and required to pay school taxes in both districts, including taxes for the building of a new school house, and without voice in the organization or management of the district. Their land included in district No. 118 is nearer their own school house than it is to the new school house site. We have already referred to the fact that this district at its widest point is four and a quarter miles wide east and west and two and three-quarters miles long and yet contains only 2410 acres of land. It will further appear on inspection of the plat that a considerable portion of the territory in the new district is much nearer to other school houses than it is to the new school house site or to any other site that might be located in the district. We cannot conceive of any justification or reason for the allowance of this school district by the county superintendent, and we think that the demurrer to the petition ought to have been overruled and the defendants required to answer and to show any justification they might have for this district existing in its ill-shaped present form, as the allegations of the bill make a *prima facie* case.

On the question of the constitutionality of said sections of the statute, we are not disposed to hold in this action that any of the sections are void or unconstitutional for

the reasons contended by appellants. The county superintendent of schools did not act in a judicial or legislative capacity and did not exercise judicial power in deciding finally on the question of the organization of the new district. He was merely acting in his ministerial capacity. (*People* v. *Buskirk,* 279 Ill. 203.) Besides, the mere fact that these sections, or any of them, might be held unconstitutional would not entitle appellants to relief by injunction. To have such relief it must appear that they have no remedy at law or that the matters fall under some recognized head of equity jurisdiction. (*Cruikshank* v. *Bidwell,* 176 U. S. 73.) We simply hold that the bill made a *prima facie* case for the reason that the action of the superintendent in allowing the school district was unjust, unreasonable, arbitrary and oppressive, and that the demurrer ought to be overruled and the defendants required to answer the bill.

The decree of the circuit court is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*