## CHICAGO B. & Q. R. CO. v. BYRON SCHOOL DIST. NO. 1, ET AL.*

(No. 1431; November 1, 1927; 260 Pac. 537)

CONSTITUTIONAL LAW—SCHOOLS AND SCHOOL DISTRICTS—REDISTRICT-ING—AUTHORITY OF DISTRICT BOUNDARY BOARD—CONSIDERATION OF TAXABLE PROPERTY IN FORMATION OF DISTRICT.

1. While establishment of school districts and changes therein is a legislative function under Const. art. 7, § 1, the legislative delegation of such duty to district boundary boards in each county is valid.

2. The Supreme Court is warranted in setting aside action of district boundary board of county in redistricting school district only where clear abuse of discretion amounting to fraud is shown.

3. Where ultimate object in redistricting School District No. 1 in Big Horn county was not for sole purpose of raising revenue, but to provide proper school facilities for 250 pupils, board's action in annexing other districts in which taxpayers had no vested right in sharing community life of any particular school district *held*, under facts, not so arbitrary and oppressive as to authorize court's interference.

4. It is not a wrong in itself to take question of taxable wealth into consideration either in formation of school districts or in changing them.

*See Headnotes: (1) 12 C. J. p. 863 n. 71; 35 Cyc. p. 834 n. 91, 92; p. 835 n. 95; p. 836 n. 96. (2) 35 Cyc. p. 836 n. 96. (3) 35 Cyc. p. 836 n. 96. (4) 43 C. J. p. 114 n. 41; 35 Cyc. p. 838 n. 12 New.

Error to District Court, Big Horn County; Volney J. Tidball, Judge.

Proceeding by the District Boundary Board of Big Horn County to redistrict a school district. From action of the board in redistricting Byron School District No. 1, in Big Horn County, the Chicago, Burlington & Quincy Railroad Company appealed to the district court, and the Ingleside Limestone Company intervened. From a judgment affirming action of the District Boundary Board, the Railroad Company brings error.

*H. C. Brome* and *C. A. Zaring* `d *Nichols & Stirrett*, for plaintiff in error.

The formation of school districts is a legislative function not subject to control by courts, unless so arbitrary and unreasonable as to constitute taking of property without due process of law. Kelly v. Pittsburgh, 104 U. S. 78; Comm'rs. v. Comm'r., 92 U. S. 307; Mills Co. v. Board, 239 U. S. 477. There is the right to appeal, 2228 C. S.; Dist. v. Board, (Minn.) 194 N. W. 8. Financial necessities of one district do not justify change of boundary. Dist. v. Dist., (Mo.) 235 S. W. 470; Houck v. Dist., 239 U. S. 240. The discretion of boundary boards may be questioned where it is shown that their action was arbitrary, unjust and unreasonable. Dist. v. Dist., (Mo.) 235 S. W. 470; Board v. Brunton, 217 S. W. 709.

*L. A. Bowman, Ray E. Lee* and *Samuel M. Lee,* for defendant in error.

The Constitution empowers the legislature to provide a public school system to meet the needs of children of school age. Art. VII, Secs. 1, 9; ch. 133, L. 1921 and Sec. 2228 C. S. (as amended by ch. 133, L. 1921) provide for a boundary board; none of the districts affected have objected to the proceedings; the taxation of property for schools is not a taking without process of law; Warner v. Galveston, 72 Tex. 92; Shepardson v. Gillett, 133 Ind. 125;

Cooley, Taxation (3rd ed.) 476; Benjiman v. Malaka, 50 Ia. 648. We do not believe the appeal statute applies in this case, unless Section 2228 should be so construed, but it should be limited to residents of districts affected; legislatures have authority to create, abolish or alter school districts, Atty. Gen. v. Lowrey, 199 U. S. 223; Minsinger v. Rau, 84 Atl. 902; Kimball v. City, 57 Pac. 1; 35 Cyc. 835; State v. Urton, 248 Pac. 369. The action of the board was not arbitrary and there is no claim of fraud. 4 C. J. 1476; 28 Cyc. 1122. The board had power to make the change, Covington v. Ky., 173 U. S. 231; Town Dist. v. Dist., 48 Atl. 697. Plaintiff in error has no legal ground for complaint; Withnell v. Co., 249 U. S. 863; Thompson v. Ky., 209 U. S. 340; Miller v. Dist., 256 U. S. 129; Chicago, etc. Co. v. Kendall, 266 U. S. 94. The school districts affected were not made parties, hence there was lack of jurisdiction in the court to make the order. Pioneer Co. v. Akin, 27 Wyo. 88; Johnston v. Co., 4 Wyo. 164. If the board acted in good faith and for the benefit of the greatest number of people, its action cannot be disturbed, even though it results in hardship to some person. Walls v. Co., 254 U. S. 300. The original papers and bill of exceptions were not indexed as required by the rules and for that reason are not entitled to consideration.

Blume, Chief Justice.

School District No. 1 in Big Horn County, Wyoming, is the Byron School District. In the early part of March, 1925, its only school building, located at Byron, was destroyed by fire. Bonds of the district had been issued just previous to the fire in the sum of $10,000, for the purpose of enlarging its school building and to provide for the establishment of a high school in connection therewith. At the time of the fire, $7,000 of this money had been expended, leaving $3,000 on hand. The district received $16,000 fire insurance, making a total sum of $19,000 on

hand after the fire. School was thereupon temporarily conducted in a Mormon meeting house. But it was found to be impossible to continue in that manner, and the school trustees of the district called upon the Commissioner of Education of this state to aid them in devising ways and means to remedy the situation. Upon investigation, it was found that a new building sufficient for the needs of the district would cost about $50,000, and that the district had, accordingly, insufficient money to construct such building; that it was already bonded in the total amount of $19,900, and that the value of the then taxable property therein was insufficient to allow it to be bonded for an amount so as to erect a building as above mentioned. The Commissioner of Education recommended that, if possible, additional territory should be annexed to the district, so that the taxable property therein might be increased to the proper amount. The school trustees of the school district thereupon petitioned the District Boundary Board of Big Horn County, consisting, under the statute, of the county superintendent, county treasurer, and the board of county commissioners, to redistrict the county so as to give proper relief to District No. 1. This district originally extended to the line bounded by the state of Montana, and it apparently had also, formerly, embraced the lands later included in Districts Nos. 3 and 5. In March, 1925, it was composed of a territory nearly, but not quite, rectangular, 17 miles long, north and south, by 6 miles wide, east and west. It was surrounded at that time by Districts Nos. 3, 28 and 30, but the bonded indebtedness of these districts and the needs thereof were such that no territory containing assessable property could be taken from either of these districts without detriment. The district immediately east of District No. 1 was District No. 3; immediately east of the latter district was District No. 5, the most westerly line of the latter being 9 miles distant from the east line of District No. 1. The Chicago, Burlington and.

Quincy railroad ran northerly through District No. 5, and was at that place about 17 miles distant from the east line of School District No. 1. The school population of District No. 1, at that time, was 244, with 195 attending school. The school population of District No. 5 was 20, with 15 attending school; 8 of these children being in that portion of the district subsequently annexed to the Byron School District, with 5 of them attending school—this school being located at or near the railroad station of Spence. The assessed valuation of School District No. 1 in 1924 was $680,337; the assessed valuation of District No. 5 during that year was $602,576. There was no high school in District No. 5, the children of high school age attending at Greybull, about ten miles distant; where, however, tuition was required to be paid and where it was necessary to send the children to room and board. The distance from Spence to Byron is 34 miles by wagon road, 29 miles by railroad to Lovell and then about 10 miles by wagon road from Lovell to Byron. The tax levy in District No. 5 was, in 1925, 5.52 mills, and in District No. 1 about 15.4 mills. Pursuant to the petition of the school trustees of Byron School District, the District Boundary Board met on March 28, 1925. The Commissioner of Education was present and recommended that relief be given as prayed. The boundary board, knowing that such relief could be given in no other way, proposed to annex to District No. 1 a strip of land 24 miles long, east and west, by four miles wide, north and south, situated directly west of the southern four miles of District No. 1, this strip being a portion of School Districts Nos. 3 and 5; all the taxable property, however, being situated in that part which then belonged to District No. 5. The meeting of the board was then adjourned to April 6, 1925, for the purpose of giving notice to the parties interested so they might appear and state their objections. The board met again on that date. No objections were made to the proposed change except by

the Chicago, Burlington and Quincy Railroad Company, and it seems by one man from District No. 5, but the Ingleside Limestone Company subsequently joined the railroad company in its objections. The board, after considering the situation, ordered the proposed change. A school, located at the station of Spence, in District No. 5, was affected by the action of the board, but it was made a condition of the change of boundaries that this school should be "standardized" upon becoming a part of District No. 1. All the taxable property transferred by the change of boundaries to District No. 1 was, as heretofore stated, located in the former District No. 5, and consisted of four miles of railroad assessed at $170,319, property of the Ingleside Limestone Company assessed at $12,789, and property of other parties, assessed at $1313. This left an assessed valuation of $418,155 in District No. 5 and raised the assessed valuation in District No. 1 to $864,758. The taxes of the railroad company were, by reason of the difference in the rate of taxation between District No. 1 and District No. 5, increased in the sum of $1682.75 during the year 1925, without considering any further increase that might be necessary as a result of the issuance of bonds in the Byron School District. The company appealed from the action of the boundary board to the District Court, in accordance with the provisions of section 2228 of the W. C. S. 1920, as amended by c. 133, Session Laws of 1921, which reads as follows:

"The county superintendent of schools, the County Treasurer, and the board of county commissioners shall constitute a board for laying off their county into convenient school districts, such board to be styled 'The District Boundary Board.' Said board by a majority vote may divide the county into school districts, may alter and change the boundaries of the districts so formed from time to time and may at any time consolidate entire districts or portions of districts when, in the opinion of such board such changes, alterations or consolidations may be

justified by existing circumstances and conditions. The District Boundary Board shall abolish, or join to a contiguous district, any school district in which no school has been maintained for twelve consecutive months, and the funds to the credit of any district so abolished, or joined to another district, shall be turned to, and become a part of, the consolidated district; provided, that nothing in this chapter shall be so construed as to prevent the District Boundary Board from joining any school district having less than eight pupils to any other school district lying contiguous thereto, if, in the judgment of the Board, it would be for the benefit of the public schools so to join such districts; Provided, that nothing in this Act shall prevent any elector or tax-payer of such school district who shall feel aggrieved, from appealing to the district court of the county from the decision of said Boundary Board.''

The Ingleside Limestone Company intervened in the proceedings on the appeal taken by the railroad company. After the case had been sent to the Federal Court and remanded, it was tried by the District Court, without the intervention of a jury. A judgment was rendered, affirming the action of the District Boundary Board. The appeal to this court was taken from that judgment.

1. The constitution of this state, recognizing the necessity of education, provides in section 1 of article 7 as follows:

''The legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, embracing free elementary schools of every needed kind and grade, a university with such technical and professional departments as the public good may require and the means of the state allow, and such other institutions as may be necessary.''

Pursuant to this constitutional provision, the legislature of this state has made provisions for the organization of school districts and changes therein from time to time.

While the establishment of such districts and the change of boundaries therein is a legislative function, the legislature has delegated the duties in connection therewith to a district boundary board in each county, and it is not questioned that this may be done. See 35 Cyc. 834. Section 2232, W. C. S. 1920, provides that a majority of the voters of any district affected by any changed boundary shall have the right to appeal from the action of the district boundary board to the state superintendent of public instruction whose decision shall be final in the matter. That course was not pursued in the instant case, but an appeal was taken to the District Court pursuant to the provisions of section 2228, W. C. S. 1920, as amended and above quoted. We need not decide what inter-relation, if any, exists between the two different provisions mentioned, or what bearing, if any, the one may have on the other, or whether the earlier provision is repealed by the later. It was held in State ex rel. v. Mory, 119 Kan. 74, 237 Pac. 1032, that even though the statutory provisions made in such cases for an appeal have not been followed, the courts will grant relief if it appears that the action changing the boundary of the school districts has been so arbitrary and oppressive as to amount to fraud, the same as courts will grant relief where the actions of public officers have been arbitrary and oppressive in other cases. See Bunten v. Rock Springs Grazing Association, 29 Wyo. 461, 480, 215 Pac. 244. That rule has been recognized in a number of cases similar to the one at bar. Grove v. School District, 20 Ill. 532; Metz v. Anderson, 23 Ill. 463; 76 A. D. 704; Fisher v. Birkey, 307 Ill. 625, 139 N. E. 126; Independent School District v. County Board, 155 Minn. 453, 194 N. W. 8; School District v. School District, 134 Minn. 82, 158 N. W. 729, and cases cited; Appeal of Chicago M. & St. P. R. Co., 134 Wash. 182, 235 Pac. 355; 35 Cyc. 835-836; 24 R. C. L. 575-576. In Fisher v. Birkey, 299 Ill. 145, 132 N. E. 498, the court said:

"Where * * * the action of the trustees or the county superintendent is clearly shown to be so unreasonable and unjust to those complaining as to amount to oppression and a wanton disregard of their rights and interests, then a court of equity will interfere to set aside such unjust and oppressive decision and grant such other relief as may be necessary and proper."

And in Independent School District v. County Board, supra, the court said:

"The rule guiding the trial court in the review of orders of this character has often been stated, but to the effect that the determination of the legislative body, the board of county commissioners under this statute, will be reversed or set aside only when it appears erroneous as a matter of law, or was arbitrary, unreasonable or unjust, against the best interests of the public, or fraudulently made."

In Froehling v. Independent School District, 140 Minn. 71, 167 N. W. 108, the court held, that the court on appeal, as from the District Boundary Board in the case at bar, will not try the issue of the advisability of the formation of a new district, and that court would doubtless hold the same thing in reference to the change of boundaries. And in School District Township v. Independent School District, 149 Iowa 480, 128 N. W. 848, it was held that the courts would not inquire into the "equity or justice" of the formation of boundaries of a school district. If the statements made in the two cases last cited can be harmonized with the other cases, then the court would not be authorized to interfere and reverse the action of the trial court or the District Boundary Board merely because the change of boundaries in the case at bar would seem to us to be "inadvisable, inequitable or unjust," and that other elements must appear in the case to warrant us to interfere. In any event, it would seem clear that we would be warranted in setting aside the action of the boundary

board only where a clear abuse of discretion is shown, amounting practically, as expressed by the Kansas court, to fraud.

2. Before proceeding further, it may be said that so far as the school children in the annexed territory are concerned, their situation has at least not been made any worse by the annexation. They can attend the school at Spence, which they have been accustomed to attend, in the future, the same as in the past, up to the time that they are qualified to enter high school. No change in that respect has taken place by the annexation. Whether the "standardization" of this school is of any material benefit to them or not, does not appear. But it is clear that the District Boundary Board took the welfare and interests of the school children residing in the annexed territory into consideration when it took the action in question here, and the members of the board evidently considered such standardization of some benefit. District No. 5 had no high school, and the children in that part of the district annexed to District No. 1 may, when the latter district establishes a high school, go to that school without tuition, whereas in the absence of annexation they would, probably, be compelled to pay tuition in whatever high school they might attend. The town of Greybull, it is true, is much nearer for qualified high school children residing in the annexed territory, but it is pointed out by counsel, that whether they would attend at Greybull or Byron, they would in either case be compelled to reside away from home. In any event, it is clear that the action of the District Boundary Board could not be said to have been arbitrary or oppressive so far as the matter now discussed is concerned, and if it was arbitrary and oppressive at all, that must be true solely by reason of the fact that the taxes of the appellants will be increased thereby. In that connection, the argument of counsel for appellants is to

the effect that in determining whether or not the action of the District Boundary Board was arbitrary and oppressive, only the interests of the people and the tax-payers of the annexed territory can be considered without reference to the interests of the people and tax-payers of the former District No. 1. This seems to be the crux of the position taken by appellants, and if what counsel say is true, there might be force in their contention, although, as already pointed out, it is at least a debatable question whether the interests of the school children are not better subserved by the annexation. But we fail to see the force of counsel's argument in this respect, and they have cited us to no case sustaining their view. In the formation of districts in the first place, absolute equality is practically impossible. Even in the same district, some tax-payers will be located nearer to school houses than others, and will be benefited more than others if they have children of school age. Some of the tax-payers may not have any children and yet are compelled to pay taxes to support schools in proportion to their wealth, though a direct benefit to them is not perceivable. In these various matters, the welfare and interests of the district and of the people thereof as a whole must necessarily be the determining factor in order to make the organization of districts possible at all. We cannot see why a different principle should apply in making changes in districts already organized. Such changes will naturally be found to be necessary from time to time, especially in a growing and developing community, and while in making them the existing status should be given due consideration, the ultimate purpose to be kept in mind necessarily is the giving of an education to the children in the community, and that would seem to be impossible if the consideration is limited as contended by counsel for appellants. That is the holding of the apparently few cases in which this point has arisen. Fisher v. Birkey, supra; Irons v. Independent School District, 119 Minn.

119, 137 N. W. 303; School District No. 36 v. School District No. 31, 134 Minn. 82, 158 N. W. 729. In the last case cited, lands in several rural school districts were annexed to a village school district, and the contention was that if it was not to the best interests of the former, or of either of them, the annexation should not be permitted. The court said:

"It is urged that in any event the interests of the rural districts from which the land is detached to form a part of the urban district, should be considered independently from the interests of the urban district. That is, if the change be found to be against the best interests of the inhabitants of any one of the districts, it should not be made in so far as it involves detaching land from that district. This argument is answered by the Irons case just referred to. 'The ultimate question is: What do the best interests, present and future, of the territory affected, considered as a whole, require?' "

So, too, in Fisher v. Birkey, supra, the court said that "the rights and interests, wishes and convenience of the inhabitants and tax payers of all of the districts affected were involved." And in the same case reported in 209 Ill. 145, 132 N. E. 498, cited to us as requiring reversal of the judgment of the trial court in the case at bar, the court said:

"Changes in the boundaries of school districts cannot at all times be made to give equal opportunities and the same convenience to all the inhabitants affected by such changes, and where it appears from such changes that the wishes and convenience of a majority of the inhabitants of the districts are served and the other parties affected are not greatly inconvenienced or oppressed or outraged by the change, a court of equity cannot interfere, by way of injunction, to set aside and declare void the action of the trustees or of the county superintendent."

The court in that case at least impliedly held that the interests of all of the territory affected by the change of boundaries, including the district to which territory has been annexed, should be taken into consideration, and that if the people in the annexed territory, or in the district from which territory has been taken are not greatly ''outraged,'' the change may be made.

We come back then to the proposition whether the appellants in this case have been greatly outraged by reason of their increased taxation. Conceding, for the purposes of this case, that increased taxation may be taken into consideration in determining that point, it is clear from what we have said that it is only one point, and cannot be decided without at the same time considering the interests of District No. 1. Counsel for appellants argue that territory cannot be annexed for the purposes of revenue only, and cite School District No. 14 v. School District No. 27, 195 Mo. App. 504, 193 S. W. 634, and School District No. 35 v. School District No. 32, 210 Mo. App. 284, 235 S. W. 470, decided under statutes expressly forbidding that to be done and which, accordingly, cannot be considered as authority here. In fact, while it is true that the annexation in this case was made for the express purpose of enabling District No. 1 to issue bonds, it is hardly fair to say that the annexation was desired and was made for the sole purpose of raising revenue. The ultimate object was to provide proper school facilities for about 250 children of school age, and while that might be made a pretense in every case where annexation is desired, it was not a pretense in the case at bar. It was a stern necessity that confronted the trustees of the district and the district boundary board—a necessity that could not be met, as substantially agreed herein, except by taking the steps that were taken. And the real question herein is as to whether or not the rights of appellants as tax-payers so overshadow the necessities in question, as to require us to say that the

District Boundary Board acted arbitrarily and oppressively, and that it should have considered the interests of the school children of secondary importance. We do not think that it is a wrong in itself to take the question of taxable wealth into consideration either in the formation of school districts or in changing them. In fact we cannot see how a board in doing so can escape from taking that factor into consideration, for it would be an exceptional case where schools could be run without money. It has been held that the amount of taxes to be paid by taxpayers is no criterion of the reasonableness or unreasonableness of the annexation of territory to a municipality. 43 C. J. 41; McQuillan, Municipal Corporations, sec. 274. Neither can it be the criterion or at least a controlling criterion, in determining whether the annexation of territory to a school district is reasonable or not, for otherwise no territory in a school district with a low rate of taxation could ever be annexed to a school district with a higher rate. This is illustrated by Gauchat v. School District, 101 Neb. 377, 163 N. W. 336. In that case territory belonging to District No. 11 was annexed to District No. 5. Before the change the tax levy for school purposes in the former district, with 22 pupils, was 7 mills, while the tax levy for school purposes in the latter district, with 149 pupils, was 35 mills. After the change the tax levy for school purposes in District No. 11 was 11 mills and in District No. 5 it was 33 mills, and the court held, if we understand the opinion correctly, that the very fact that the tax levy in the latter district was still high, while that in District No. 11 was still comparatively low, after the change of boundaries, was in itself a sufficient showing that the change was reasonable. The situation in the case at bar is somewhat similar in respect to the relative number of school children and the relative rates of taxation in Districts Nos. 1 and 5.

As in the case of persons with or without children, so it is the duty of every corporation to share in the community life of some school district by helping to bear part of its burdens. The stable government, the character of civilization and the ultimate benefit resulting from education to all alike justifies that requirement. But no person or corporation can have a vested right in sharing in the community life of a particular school district. We see no grounds for appellants to say that they are interested only in the 20 school children in District No. 5; that they should share only in their community life and that they have no interest in the 244 school children of District No. 1. The latter district was, in a sense at least, considering the nature of the country, adjacent to property of plaintiffs in error. So far as the railroad is concerned, it was and is benefitted by the people of the Byron School District probably as much, per capita, as by the people in District No. 5, and probably more so. It is true that the property of plaintiffs in error was located far from the old boundaries of District No. 1, if we measure distances by the standard that may be applied in measuring lands in Illinois or other similar states, but we are not sure that we can say this in the light of the conditions in some portions of Wyoming. Much of the land is barren. In fact it appears that the portion annexed to the Byron School District formerly belonging to District No. 3 has no taxable property at all. It is an area 9 miles long by 4 miles wide, and lies between that portion of the former District No. 5, now annexed to District No. 1, and the old boundary line of the latter district. But counsel, instead of conceding, as it seems they should, that this condition justified the District Boundary Board in taking territory from District No. 5, contend that it shows that the board's action was arbitrary and oppressive. Yet the condition of the lands is nature's fault. The members of the board accepted it as they found it, and took action in conformity

therewith. We are unable to see how that could show arbitrary or oppressive conduct, particularly in view of the fact that the board could not justly take lands in any other direction and annex it to District No. 1. It is said by Dillon on Municipal Corporations (5th ed.) 599, that in determining the question of reasonableness of an ordinance, the court will have to regard all the circumstances of the particular city, the objects sought to be attained and the necessity which exists for the ordinance. It is said in McQuillan, supra, sec. 274, that, ordinarily, the reasonableness of the extension of corporate boundaries must be determined by the circumstances existing at the time of the proceedings. The same general principles must necessarily be applicable in the case at bar. And, applying them here, we are not convinced that the action of the District Boundary Board was, under the circumstances, shown to be so arbitrary and oppressive as to authorize us to interfere.

The judgment of the trial court should, accordingly, be affirmed, and it is so ordered.

*Affirmed.*

Potter, J., and Kimball, J., concur.