W. E. BIXBY, Vaughn E. Johnson, William E. Barber, Thomas H. Mitchell, Ted L. Pennington, George Etchemendy, and William Cross, Appellants (Plaintiffs below),

v.

George CROSS, Thomas McCarty, Charles Robbins, Jack Gillespie, and Maude S. Ryan, constituting the District Boundary Board of Converse County, Wyoming, Appellees (Defendants below).

No. 3134.

Supreme Court of Wyoming.

Aug. 12, 1963.

Robert R. Rose, Jr., Casper, for appellants.

Maurer & Garst, J. B. Sullivan, Joseph Garst, Douglas, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The question involved in this case is whether the District Boundary Board of Converse County had jurisdiction to change the boundaries of Converse County High School District to include therein additional school districts, without approval of the residents of the added districts; and if so, whether its jurisdiction in this instance was properly exercised.

On February 7, 1962, a resolution was adopted by the boundary board purporting to add School Districts 6, 10, 14 and 22 of Converse County to Converse County High School District. None of these school

districts belonged to a high school district at the time of such action. Thereafter, an action was brought by citizens and taxpayers of School Districts 10 and 14 challenging the legality of the resolution, and seeking to set aside the action of the boundary board on the ground that such action was null and void. Judgment was entered in favor of the boundary board and plaintiffs have appealed.

### Statutory Provisions

Prior to 1961, § 21–211, W.S.1957, authorized district boundary boards to change the boundaries of school districts or to consolidate entire districts. In 1959 this court rendered a decision in the case of In re Sanders' Appeal, 80 Wyo. 265, 341 P.2d 85, holding that the authority of a boundary board under § 21–211 to change boundaries was limited to districts formed by it. This did not include high school districts which are formed under separate and special laws.

These special laws are now contained in §§ 21–172 to 21–181 and 21–183 to 21–200, W.S.1957. They require a favorable vote of the qualified electors for the formation of any high school district. Also, §§ 21–207 to 21–210, W.S.1957, provide for the annexation of additional districts into a high school district upon the petition and vote of the qualified electors.

The legislature in 1961, at its first session following the Sanders decision, amended § 21–211 for the purpose of extending the power of district boundary boards to include the power to change the boundaries of high school districts, when the trustees of the affected high school districts consent. This amendment, contained in Ch. 111, S.L. of Wyoming, 1961, insofar as pertinent to this case, reads:

"* * * Said board [district boundary board] by a majority vote may divide the county into school districts, may alter and change the boundaries of any school district, including high school districts, if the boards of trustees of such high school districts consent, and may at any time consolidate any such

districts or portion of districts, when, in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions and where high school districts are involved where the boards of such high school districts consent * * *."

The Converse County High School District is the only high school district involved in the change of boundaries with which we are now concerned. The consent of its board of trustees is denoted by the fact that the boundary board's action resulted from a petition unanimously made and signed by the board of trustees of such high school district.

The citizens and taxpayers who have brought this action do not challenge the right of the legislature to delegate to district boundary boards the power to change the boundaries of high school districts and to include additional districts in an existing high school district. They do, however, claim the 1961 legislation was not sufficient to accomplish that purpose, and that the laws pertaining to high school districts still prevail over § 21–211, as amended.

Counsel for appellants refer to §§ 21–207 to 21–210, pertaining to the annexation of additional districts into a high school district upon the petition and vote of the electors, as "special" statutes and to Ch. 111, pertaining to powers of boundary boards, as a "general" statute. Thereupon authority is cited to the effect that a special statute will govern and prevail over a general statute covering the same subject. It is argued this rule applies in the matter before us. We cannot agree that it does.

### Are The Statutes in Conflict?

Our attention is directed to the opinion of Chief Justice Blume in the Sanders case (341 P.2d at 88), and it is pointed out that he quoted with approval from State ex rel. Mellinger v. Throckmorton, 169 Kan. 481, 219 P.2d 413, 417, to the effect that where there is a "conflict" between a statute dealing generally with a subject and another dealing specifically with

a certain phase of it, the specific legislation controls in a proper case.

It must be recognized, however, that a material change has taken place since the Sanders case was decided. As pointed out by Chief Justice Blume in the Sanders case, at 341 P.2d 87, the power of a boundary board was at that time limited and applied only to districts formed by it. Such boards could not establish and form high school districts. Therefore, they could not then, under the authority of § 21–211, change the boundaries of a high school district. In view of this, the only conclusion left to the court at that time was that the boundaries of high school districts could be changed only as provided for in the laws pertaining to high school districts.

Since that time legislation has been adopted, through Ch. 111, S.L. of Wyoming, 1961, which in itself deals "specifically" with the power of district boundary boards to change the boundaries of high school districts. Indeed, it would be hard to imagine how this particular phase of the powers of district boundary boards could be dealt with more specifically.

Moreover, the 1961 law not only deals with the subject of changes in the boundaries of high school districts in a specific way, but it deals with a phase of that subject which is not dealt with in any other statute. It deals with the procedure for incorporating into an existing high school district additional territory, when the inhabitants of that territory are not willing to enter a high school district by their own choice.

If the amendment is thought of in this light, it becomes apparent that it does not conflict with §§ 21–207 to 21–210. Those sections have to do with the procedure for annexation of districts to an existing high school district *by petition and vote of the electors.* By contrast, Ch. 111 provides for the change of boundaries and for the consolidation of districts, *when in the opinion of the board* the change or consolidation is justified by existing circumstances and conditions.

■ It is a matter of common knowledge that changed economic conditions have created problems for those charged with the administration of school affairs. In keeping with these changed conditions, the legislature has seen fit to delegate to boundary boards the power to put into high school districts such territory as ought to be there in order to serve the best interests of the schools, if the high school district trustees consent. Admittedly, this is a departure from the situation which existed prior to 1961, when there was an absence of such power on the part of boundary boards. It would be anomalous to think of this new delegation of power as being in conflict with statutes which are wholly devoid of such a delegation.

We have heretofore said no person can have a vested right in a particular school district.[1] It would follow from this that no person or group of persons can have a vested right in keeping property out of a high school district. On that basis, it was consistent for the legislature to leave on the statute books those laws giving residents of a district the right on their own choice to come into a high school district, and still at the same time to place authority in the hands of school officials to bring them in without their choice when the best interests of the schools require it.

### Factual Considerations

■ In addition to challenging the jurisdiction of the board to make the change it did make, appellants also claim the board failed to give proper consideration to all factors involved in such a change. The board's action must of course be considered an illegal exercise of discretion, if it did not have before it sufficient information upon which it might properly find the change to be in the best interests of the public. School District No. 9, Fremont County v. District Boundary Board In and

1. See Marathon Oil Company v. Welch, Wyo., 379 P.2d 832, 835, and cases cited.

For Fremont County, Wyo., 351 P.2d 106, 111.

In the Fremont County District 9 case, this court noted a total absence of evidence concerning the area which was detached and a lack of any comprehensive showing of the needs or ability to meet the needs in any of the areas involved. With respect to that situation, in the case at bar, it seems apparent from the judgment of the trial court that the judge thought the board in this case had had sufficient information and evidence concerning the areas involved to justify the action taken. He probably had the Fremont County decision in mind and because of it exercised care in setting forth both his own findings of fact and conclusions of law.

No suggestion is made by appellants, in urging this appeal, that there was a lack of substantial evidence to support the board's action. In fact, not only are the court's findings unusually extensive as to the fullness of the board's deliberations, but appellants' brief itself gives a rather complete résumé of proceedings and considerations carried on by the board.

Through pretrial order it is admitted that school problems and particularly those of Converse County High School District had been discussed from time to time by the Reorganization Board, an association of school trustees of the county, and with representatives of the State Board of Education, during a period of more than two years. Members of the county's boundary board were present at these discussions.

On February 6, 1962, a meeting was regularly and properly called by the boundary board and members of the boards of trustees of the elementary school districts affected were present. There was a large public attendance at this meeting, including counsel for the appellants in this case, and the problems in dispute were thoroughly discussed.

According to the pretrial order, referendum votes had been taken in all four of the elementary school districts involved, on the question as to whether electors would agree to have their territory included as a part of the high school district. Finally, on February 7, 1962, the boundary board met in executive session to consider the petition of the high school district. At this meeting there was a two-hour discussion; documentary evidence was discussed, and the whole educational system of the county was considered. It was affirmatively decided by the board that School Districts 6, 10, 14 and 22 of Converse County should be annexed to Converse County High School District.

Without claiming the board lacked knowledge and information as to the needs or ability to meet these needs in the areas affected, appellants advance as their sole ground of appeal, as far as their fact-issue is concerned, that the "only" consideration of the boundary board was the financial condition of Converse County High School District and that adequate consideration was not given to the best interests of the annexed districts. In other words, they agree the question boils down to whether the action of the board was in the best interest of all concerned.

This presents, of course, a question which neither the trial court nor this court can decide. By legislative delegation that decision has been left to the district boundary board. Section 21–211, as amended in 1961, authorizes the board to change boundaries, including high school districts, when "in the opinion of such board" such changes may be justified by existing circumstances and conditions. Thus, it is clear the legislature intended changes to be made according to the best judgment and discretion of boundary boards and not the courts.

Justice Parker, as author of the opinion in the Fremont County District 9 case, pointed out, at 351 P.2d 111, that in considering whether there was substantial evidence upon which a decision of the boundary board could reasonably be based, we "may not substitute our views as to what the best interests of the people were." In general, he said it was conceded the principles enunciated in Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, must govern. Thereupon, he

quoted with approval from that case and included the following excerpts:

"* * * we would be warranted in setting aside the action of the boundary board only where a clear abuse of discretion is shown, amounting practically * * * to fraud."

"* * * the welfare and interests of the district and of the people thereof as a whole must necessarily be the determining factor * * *."

If a board's discretion is properly exercised, its decision is final and not subject to interference by the courts. Indeed, it is well settled in this jurisdiction that courts are warranted in setting aside action of an administrative agency only where its action is arbitrary or fraudulent or where there is an illegal exercise of discretion.[2]

In the Fremont County District 9 case previously referred to, the court concluded, at 351 P.2d 116, by saying it could not be said there was *an opportunity* for the board to duly consider the welfare and interests of "all the people who were concerned." In the instant case on the other hand, there is no contention that the board was without *an opportunity* to consider the welfare and interests of all the people concerned. Instead, it is contended merely that the board acted only in the best interest of the high school district and not in the best interest of *all.*

We hope we have made it clear that we may not substitute our views for those of the board with respect to what is for the best interest of all concerned. The trial court found specifically that the action of the board was without oppression, prejudice, fraud or other similar traits and was for the benefit of the public and school population of the county and districts involved. No reason has been given for believing such action was arbitrary and not in good faith, and we cannot say as matter of law

that the board's decision was erroneous as to what is best for all concerned.

Therefore, we not only hold that the legislation adopted in 1961 applies and authorizes boundary boards to make changes such as were made in this instance; but we also say when the board has had *an opportunity* to duly consider the welfare and interests of all the people concerned and when it has properly exercised its best judgment, without abuse of discretion, and determined that the change is "justified by existing circumstances and conditions," then the courts will not substitute their views nor set the action aside. The judgment of the district court should be affirmed.

Affirmed.

Mr. Chief Justice PARKER, concurring in the result.

The right to a hearing as a condition precedent to the taking of life, liberty, or property has been a fundamental concept of the common law ever since the time of the Magna Charta, and was made effective by our founders in the establishment of various protections, notably the Fifth Amendment of the United States Constitution and §§ 6 and 7 of Art. 1 in the Constitution of Wyoming.

The litigation growing out of the decisions of administrative agencies has increased sharply in recent years both in state and Federal matters, 1 Davis, Administrative Law Treatise, p. III, Preface (1958), in which latter jurisdiction under the due process clause it has been stated as a truism that in our system of law adjudicatory action cannot validly be taken by any tribunal whether judicial or administrative except on a hearing wherein each party shall have opportunity to know the claim of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence on his behalf, and to make argument. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129;

2. Thompson v. Conwell, Wyo., 363 P.2d 927, 928; Rayburne v. Queen, 78 Wyo. 359, 326 P.2d 1108, 1111; Mahoney v. L. L. Sheep Company, 79 Wyo. 293, 333 P.2d 712, 716; Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P. 2d 520, 526.

Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406; Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103; L. B. Wilson, Inc. v. Federal Communications Commission, 83 U.S.App.D.C. 176, 170 F.2d 793; 1 Davis, Administrative Law Treatise, § 7.01, p. 409 (1958).

Because of repeated questions which have been and are being raised concerning the powers of the district boundary board under § 21–211, W.S.1957, and the tendency of this court to rule that such board has carte blanche authority to annex property to a school district whenever in its opinion an alteration is justified and because such tendency seems to be in violation of the right of all citizens to be heard, some general discussion of the subject is warranted.

Historically, the boundary board was authorized by c. 42, S.L. of Wyoming, 1913, to alter district boundaries "as the convenience of the inhabitants of the aforesaid districts may require." In 1921 the statute was amended to permit the alterations when "in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions" (c. 133, S.L. of Wyoming, 1921). This provision, although not in words directing a hearing, certainly implied that one was necessary. The statute remains substantially the same, except for a further amendment, c. 111, S.L. of Wyoming, 1961, which included high school districts in the possible alterations if the boards of trustees of the high school districts consent.

In Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, this court pointed out that the interests of all of the territory affected by the change in boundaries, including that to be annexed, should be given consideration, and in effect required a hearing. In School District No. 9, in County of Fremont v. District Boundary Board In and For Fremont County, Wyo., 351 P.2d 106, this rule was reiterated even more clearly. The court now seems to

have departed therefrom. The principal opinion in Marathon Oil Company v. Welch, Wyo., 379 P.2d 832, erroneously indicated that the court had previously held § 21–211 to be constitutional, although the question was not there raised, and went on to say that nothing in the School District No. 9 case implied the necessity of a formal notice and hearing for property owners and taxpayers. The concurring opinion further reduced the effect of the rule announced in the School District No. 9 case by interpreting the pronouncement to be at most that a boundary board acts arbitrarily if it has nothing before it to justify the decision it reaches. The obvious trend thus shown is here continued when the court says it cannot question the opinion of the board, accepts the problems created by changed economic conditions as a matter of "common knowledge" and even indicates that there need be no consideration of matters other than the requirements of the high school district to which the elementary areas are annexed.

As to the meetings of the Converse County Boundary Board, there were two. The first was an open session on February 6, 1962, which apparently lasted about two hours where various citizens were present. The second, on February 7, was closed to the public, only the members of the boundary board and its attorneys being present. The minutes of the first meeting disclosed no matters pertaining to elementary district benefits which were the subject of inquiry in the public session. At the district court hearing when various members of the board were called, they readily admitted that the financial problem of the high school district was the paramount issue and that the board was attempting to spread the tax burden. There was however some testimony which indicated a consideration by the board of the needs of high school students then living in the elementary districts and of the probably larger number in the future. This unchallenged evidence though slight and less than satisfactory constitutes some

basis for the board's determination that the changes and alterations were justified by the existing circumstances, and I therefore concur in the affirmance of the trial court's judgment.