FOREST OIL CORPORATION, a corporation, et al., Appellants (Plaintiffs below),

v.

Andria A. DAVIS, Edness Mokler, John E. Purcell, John J. Tobin and Dean C. Morgan, constituting the District Boundary Board of Natrona County, Wyoming; and Natrona County High School District, a Wyoming public corporation, Appellees (Defendants below).

No. 3255.

Supreme Court of Wyoming.

Dec. 1, 1964.

A. G. McClintock, Walter C. Urbigkit, Jr., Cheyenne, Robert R. Rose, Jr., Casper, R. E. Stevens, Denver, Colo., for appellants.

Ernest Wilkerson, Casper, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

By original proceeding in the district court, plaintiffs attack the action of Natrona County District Boundary Board extending boundaries of Natrona County High School District so as to include therein Elementary School Districts 5, 13, and 18. Plaintiffs claimed the board's action was (1) illegal and void because outside of its authority, (2) unconstitutional, and (3) arbitrary, capricious and not sustained by evidence presented to the board. Following trial without jury, defendants' motion for judgment was sustained for lack of evidence and judgment was entered for defendants, the court finding: (1) The "appeal" was not properly taken; (2) The proceeding was a collateral attack upon the boundary board's decision; and (3) Plaintiffs failed to establish any arbitrary or capricious acts on the part of the board. Plaintiffs appeal to this court.

It is conceded that in Forest Oil Corporation v. Davis, Wyo., 384 P.2d 716, this court rejected plaintiffs' first two contentions. In consequence, appellants can now rely only upon their claim that the board acted arbitrarily and capriciously.

Plaintiffs argue that as there were no students for high school within Elementary School District 13, during the 1962–1963 period, and Elementary School Districts 5 and 18 each had only five such students, the board's action was premature and unwarranted. While the numbers mentioned correspond with those of the allegations of the petition for change of boundaries, the County Superintendent of Natrona County, testifying before the district court on November 19, 1963, stated that District 5 had eight students attending the Natrona County High School. As to what further changes in the numbers of students attending or available for high-schooling there were in Districts 5, 13, and 18, the record is silent. However, this discrepancy

in numbers emphasizes the unwisdom of speculating in advance about the future needs of the elementary school districts for high school facilities.

Plaintiffs also question the sufficiency of evidence tending to show the inadequacies of the high school district's charges for the tuition of high school students from Districts 5, 13, and 18. The materiality of this point is doubtful. The maximum per-pupil rate a high school district may charge for this type of tuition as prescribed by § 21–53, W.S.1957, is the actual cost per pupil of maintaining the high school for the preceding school year as certified by the president and clerk of the high school district. Section 21–54, W.S.1957, requires the high school district to admit nonresident pupils upon that basis unless doing so would work a hardship upon the high school district. Furthermore, § 21–54, makes the board's decision in this respect subject to review by the county superintendent and final decision by the State Board of Education.

Plaintiffs charge that the Natrona County High School District's effort to extend its area is motivated by the desire to obtain substantial taxes in order to provide funds which it deemed necessary for its needs. Even if this be true, that would not adversely affect the propriety of the boundaries' extensions in the face of there being, in its opinion, benefits and oportunity for educational improvement to both the new areas as well as to the old. Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537.

Plaintiffs assume that the general welfare of the residents of Districts 5, 13, and 18, will not be served by their inclusion in the high school district. But this question is by law relegated to decision by the Natrona County District Boundary Board, and that decision must prevail unless it is affirmatively shown that it was improperly reached. Id. at 267, 268, 260 P. at 539.

No one may justifiably gainsay the present need to provide better and high-

er education for the youth of our country, and the duty and obligation of all to make available necessary and proper facilities to serve that purpose has long been recognized as resting upon everyone alike without reference to individual or direct benefits received. Id. at 273, 260 P. at 541. Childless persons must contribute to the cost of eductaion just the same as those whose fortune it is to have many children. Id. at 273, 260 P. at 541. There is no inherent right to escape taxation for maintenance of high schools. Neither is an immediate lack of pupils qualified to take advantage of high school education any reason to forego the inclusion of an elementary school district within the boundaries of an existing high school district already maintaining a high school. Even if there will never be a single pupil available for high school education from what is presently an elementary school district, that fact alone cannot require that it be forever exempted from paying its fair share of taxes for the support and maintenance of our higher educational needs. In our growing and developing communities, it will be found necessary from time to time that changes must be made in school district boundaries in order to keep pace with modern needs. In doing so the existing status should not be entirely disregarded, yet the benefit to the over-all educational demand is also entitled to reasonable consideration in the redesignation of district boundaries in order that the school tax burden may be more equitably distributed. Id. at 269, 260 P. at 540. The burden of providing education must be borne by all taxpayers, and allocation to areas and in proportion to need must, of necessity, be left to the determination by some authority. In this State that authority is given unto district boundary boards, and their actions must be upheld unless it affirmatively appears impropriety was practiced because of fraud, collusion, by arbitrary, capricious action, or because made without having before it, and considered, available facts and circumstances bearing upon the decision it is

called upon to make. Id. at 267, 268, 260 P. at 539. School Dist. No. 9, In County of Fremont v. District Boundary Board in and for Fremont County, Wyo., 351 P.2d 106, 113. And see generally 79 C.J.S. Schools and School Districts § 382a, p. 174, and Dickinson v. Porter, 240 Iowa 393, 35 N.W.2d 66, appeal dismissed 338 U.S. 843, 70 S.Ct. 88, 94 L.Ed. 515.

In the instant matter it was not only the present but the future needs of the elementary districts, as well as the present and future needs of the high school district, which were to be considered. The question should not have been decided merely by weighing the need of the one as against the other. The proceeding was not a contest. It was an inquiry as to what might best be done to provide adequate educational service to the youth of the entire area involved, and the decision should not have been compassed by the need in any one year or even within a short period of years. School facilities cannot be provided on a year-to-year basis, but must accommodate educational needs over a considerable period of time.

■ The record gives no suggestion whatsoever or even the barest intimation that there was any fraud or collusion practiced by the board.

No whit of evidence is found in the record to indicate the board's action was arbitrary or capricious. On the contrary, it is evident that the board members each gave their studied attention to the matter before acting collectively as a board to include the elementary districts in the high school district.

■ The correctness of the court's finding that the "appeal" was not properly taken has also been challenged on the ground the instant action was an original proceeding in the district court rather than an appeal from the action of the district boundary board. Even if this finding was improper, inasmuch as the court's ultimate decision was correct, the error became harmless. Similarly, the question whether

plaintiffs' suit in the district court was a collateral attack upon the board's action is not now of moment. There may be some question, when a statutory method of appeal from administrative action is provided, whether that method is exclusive, excepting, possibly, where there is inherent right of appeal or direct action where fraud, collusion, coercion, or other similar impropriety is charged. As this matter now stands before us, the only grounds upon which relief is sought are that the board's action was arbitrary, capricious, and not sustained by the evidence presented to the board. The statutory appeal would have sufficed to present those grounds. Notwithstanding, the conclusion we reach not only affirms the judgment of the district court but also serves to affirm the decision of the Natrona County District Boundary Board as well. This renders moot the question of the method used to bring before the district court the legality and correctness of the Natrona County District Boundary Board's action.

The judgment of the district court approving the action of the Natrona County Boundary Board's extension of the boundaries of the Natrona County High School District so as to include Elementary School Districts 5, 13, and 18, is therefore affirmed.

Affirmed.

Mr. Chief Justice PARKER (dissenting).

I am unable to agree with either the result or the reasoning in the majority opinion. The instant situation, although not complicated by a lack of opportunity for hearing, is reminiscent of other boundary board cases in recent years—in two of which I found it necessary to speak. Bixby v. Cross, Wyo., 384 P.2d 710; Marathon Oil Company v. Welch, Wyo., 379 P.2d 832.

I am acutely aware of the needs of our citizens, and especially of our young people in the field of education, and agree generally with the statement of one of the principal witnesses in the present case that "School administrators, the Wyoming Education Association and the State Department of Education are on record as favor-

ing a situation where all taxable property in Wyoming support twelve years of education," but steps toward the effectuation of that thesis are within the province of the legislature to be accomplished only under a comprehensive plan, preferably submitted by the State Department of Education. It is not a matter for piecemeal judicial interpretation, even though this purports to grow out of a statute (§ 21–211, W.S.1957 (1963 Cumulative Supp.)), which has been interpreted as conferring legislative authority on district boundary boards.

It is the unchallenged law of this jurisdiction, supported by numerous cases, that the best interests of the people in the entire area affected must be considered by the boundary board. In Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, 540, it was said:

"* * * In these various matters, the welfare and interests of the district and of the people thereof as a whole must necessarily be the determining factor in order to make the organization of districts possible at all. We cannot see why a different principle should apply in making changes in districts already organized. * * *"

In School District No. 9, in County of Fremont, v. District Boundary Board in and for Fremont County, Wyo., 351 P.2d 106, 111, it was announced:

"* * * a district boundary board in making a change must have before it sufficient information upon which it may properly find that it is to the best interests of the people in both the annexed and the annexing areas. * * *"

This principle was approved in Marathon Oil Company v. Welch, supra. In Bixby v. Cross, supra, 384 P.2d at 712, this court stated:

"* * * The board's action must of course be considered an illegal exercise of discretion, if it did not have before it sufficient information upon which it might properly find the change to be

in the best interests of the public. * * *"

and speaking of the appellants' unsuccessful contention, 384 P.2d at 713:

"* * * In other words, they agree the question boils down to whether the action of the board was in the best interest of all concerned."

In Forest Oil Corporation v. Davis, Wyo., 384 P.2d 716, 718, it was said:

"In cases * * * where the same resolution was involved * * *, the district court has vacated and set aside this resolution for the reason that the board acted arbitrarily and did not have before it sufficient information upon which it could properly find the proposed change in boundaries to be in the best interests of the public generally. * * *"

In Clear Creek Cattle Co. v. Davis, Wyo., 384 P.2d 719, 720, it was noted:

"This court, in the Fremont County case, *. * * made it clear that a district boundary board must have before it sufficient information upon which it may properly find that a change is to the best interests of all the people concerned. * * *"

A careful review of the record in the present controversy discloses that there was before the board no clear evidence of any benefit to the areas comprising the three districts which were in effect to be annexed by the boundary board's action. Instead, there was evidence of the need of the high school district for finances and an enunciation by its school authorities of a philosophy adopted by the State Department of Education that all taxable property in Wyoming should support twelve years of education. Moreover, there was testimony from residents of the areas to be annexed protesting the requested action.

The crux of the present opinion arises from the statement that:

"The record gives no suggestion whatsoever or even the barest intimation

that there was any fraud or collusion practiced by the board.

"No whit of evidence is found in the record to indicate the board's action was arbitrary or capricious. * * *"

Such a statement wholly ignores the fundamental concept that "Action of an administrative agency is arbitrary or capricious when it is without reasonable basis or not supported by substantial evidence * *." 2 Am.Jur.2d Administrative Law § 621; and see id. §§ 452, 650, 651.

In the Chicago Junction Case (Baltimore & O. R. Co. v. United States), 264 U.S. 258, 44 S.Ct. 317, 319–320, 68 L.Ed. 667, Mr. Justice Brandeis said:

"* * * The provision for a hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with it. To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action. * * *"

Inland Motor Freight v. United States, D. Idaho, 36 F.Supp. 885, repeated this principle. And see Annotation, 123 A.L.R. 1349. In Torrance v. Caddo Parish Police Jury, La.App., 119 So.2d 617, 619, it was said:

"Generally an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. 'Capriciously' has been defined such as 'a conclusion of a commission when the conclusion is announced with no substantial evidence to support it or a conclusion contrary to substantiated competent evidence.' * * *"

And see Heaps v. Cobb, 185 Md. 372, 45 A.2d 73, 76. In Thurman v. Meridian Mutual Insurance Company, Ky., 345 S.W.2d 635, 639, it was said:

"* * * By 'arbitrary' we mean clearly erroneous, and by 'clearly erroneous' we mean unsupported by substantial evidence. * * *"

In J. Ray McDermott & Co. v. Hudson, Wyo., 370 P.2d 364, 370, we observed that the burden of showing action to be arbi-

trary, capricious, and a grave abuse of discretion, was discharged by evidence which showed that a material factor had received no consideration.

Although the chairman of the district boundary board inquired of the other members if they had read and were familiar with the transcript of the public hearing, the minutes do not purport to show that there was any evidence before the board which warranted the change of boundaries, and this despite a written admonition from its counsel of the ultimate question to be answered, "is it in the best interests of the taxpayers and schools and students in both the present high school area and also in the area which is proposed to be included within the high school area that the change of boundaries be made."

There is no basis for approving the board's action, and the judgment of the trial court should be reversed.