[Civ. No. 3717. Second Appellate District, Division One.—November 17, 1921.]

ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, etc., Petitioner, v. R. F. McCLELLAN, Chairman of the Board of Supervisors, etc., Respondent.

[1] MUNICIPAL CORPORATIONS—CONTROL BY LEGISLATURE.—Municipal corporations are subordinate subdivisions of the state government over which the state has plenary power, and they may be created, altered, or abolished at the will of the legislature acting directly or under general laws through a local board or council to which the exercise of such power is granted.

[2] SCHOOL DISTRICT—NATURE OF—CHANGE OF BOUNDARIES—NOTICE— QUESTION FOR LEGISLATURE.—A school district when organized as provided by the Political Code is a public corporation of a *quasi*-municipal character and the power to change the boundaries of such a district, whether exercised immediately by the legislature or

mediately by the board of supervisors is a legislative act, and in the absence of constitutional restrictions the question as to whether such a board may exercise such delegated power without notice is one solely for the determination of the legislature. .

[3] ID. — ANNEXATION OF INTERMEDIATE SCHOOL DISTRICT TO HIGH SCHOOL DISTRICT—PROCEEDING BY BOARD OF SUPERVISORS—NOTICE NOT REQUIRED—CONSTRUCTION OF CODE.—The power of a board of supervisors to annex the territory of an intermediate school district to a high school district is measured by section 1734 of the Political Code, and since such section does not require notice of the proceeding to be given to the residents or owners of property in the district to be annexed, notice is not necessary and the board has discretionary power to act whenever it is made to appear that compliance with the provisions of such section has been had.

PROCEEDING on application for a Writ of Mandate to compel signing of high school bonds. Granted.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, and Jerry H. Powell, Deputy County Counsel for Petitioner.

O'Melveny, Millikin & Tuller, Sayre Macneil and Paul E. Schwab for Respondent.

Jas. McLachlan and Frank H. Snyder, *Amici Curiae.*

SHAW, J.—This proceeding is one in mandate to compel the respondent, as chairman of the board of supervisors of Los Angeles County, to sign certain bonds which petitioner proposes to issue for high school purposes. An alternative writ was issued, the return to which is made by demurrer to the petition.

The chief ground of opposition to granting the relief sought is the alleged irregularity in the procedure for the annexation of certain intermediate school districts to petitioner high school district, and without which, as constituent parts of said high school district, it is conceded the bonds could not be legally issued. These intermediate school districts, the annexation of which is attacked, are those of Leona, Palmdale, and Alpine school districts, all of which were annexed by orders of the board of supervisors made long prior to the election at which the bonds were voted and upon proceedings had and taken in all respects as pro-

vided by section 1734 of the Political Code. This section provides that: ''Whenever a majority of the heads of families or a majority of the electors residing in any school district contiguous to a high school district, in the same or in adjoining counties, as shown by the affidavit of one or more of the petitioners, shall present to the superintendent of schools who has jurisdiction over said high school district, a petition for the annexation of such school district to such high school district, accompanied by an agreement signed by a majority of the members of the high school board of the high school district to which annexation is desired, and by a majority of the trustees of such school district, consenting to such annexation and setting forth the terms thereof, such superintendent of schools shall, after verifying the signatures thereon and finding them sufficient, transmit such petition and agreement to the board of supervisors of his county with his recommendations thereon. Such board may thereupon, in their discretion, make an order annexing such school district to such high school district upon the terms agreed on.''

As stated, the order of the board of supervisors was made after a full compliance with the statute, which, however, contains no provision requiring that, as a condition of making the order of annexation, notice must be given to the owners of land within or residents of such districts which it is proposed to annex. In the instant case none was given at any stage of the proceedings. By reason of such omission, respondent insists that the orders annexing the territory of Leona, Palmdale, and Alpine school districts to the high school district were ineffectual for the purpose and the same never became part of the high school district; and further insists that if section 1734 be construed as not requiring notice, then it is unconstitutional in that it contemplates the taking of private property without due process of law.

[1] Municipal corporations are subordinate subdivisions of the state government over which the state has plenary power, and they may be created, altered, or abolished at the will of the legislature acting directly or under general laws through a local board or council to which the exercise of such power is granted. (*People* v. *Town of Ontario,* 148 Cal. 625 [84 Pac. 205]; *People* v. *Los Angeles,* 154 Cal. 220

[97 Pac. 311].) **[2]** "A school district, when organized as provided by the Political Code, is a public corporation of a *quasi*-municipal character, possessing such authority as has been conferred by the legislature, to be exercised in the mode and within the limits prescribed by the statute. The power to change the boundaries of a district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the legislature or mediately by the board of supervisors—the local legislature—is, . . . a legislative act." (*Hughes* v. *Ewing,* 93 Cal. 414 [28 Pac. 1067]; *Worthington School Dist.* v. *Eureka School Dist.,* 173 Cal. 154 [159 Pac. 437]; *Pass School District* v. *Hollywood etc. School Dist.,* 156 Cal. 416 [20 Ann. Cas. 87, 26 L. R. A. (N. S.) 485, 105 Pac. 122].) In discussing the establishment of permanent road districts, which in character are not unlike school districts, the court, in *Potter* v. *County of Santa Barbara,* 160 Cal. 349 [116 Pac. 1101], said: "The legislature can create them, or cause them to be created, without giving any person a voice or hearing upon the matter." The establishment of a system of public instruction throughout the state is a governmental function, as to which the state reserves to itself the means of giving it complete effect and full efficiency without regard to the wishes of the people "deficient in proper appreciation of its advantages." (2 Cooley on Taxation, 3d ed., p. 1299.) Possessing such power to create, alter, or abolish districts, the function, governmental in its nature, may be exercised immediately by the legislature or by subordinate bodies to whom the matter is delegated, subject to such conditions, and without notice, as it may impose. In the absence of constitutional restrictions, and there are none affecting this case, the question as to whether boards of supervisors may exercise such delegated power without notice, is a question solely for the determination of the legislature, and in its wisdom it has not required the giving of notice. Indeed, our attention is directed to no authority wherein it is held that the inhabitants of an intermediate school district are entitled to notice of a hearing upon the proposition as to whether the territory thereof shall be annexed to a high school district. In *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes], it is said: "There is nothing in the

essential nature of such a corporation [irrigation district], so far as its creation only is concerned, which requires notice to or a hearing of the parties included therein before it can be formed. It is created for a public purpose, and it rests in the discretion of the legislature when to create it, and with what power to endow it." While the language quoted was used in discussing the creation of an irrigation district, it is equally applicable to the creation of or annexation of territory to a high school district.

While counsel for respondent concedes the principles enunciated in the authorities cited, he insists the decisions of the supreme court in *Brookes* v. *City of Oakland,* 160 Cal. 423 [117 Pac. 433], and *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792 [Ann. Cas. 1918D, 255, 162 Pac. 97], are inconsistent therewith. Conceding that in discussing the questions before the court in those cases language was employed which may afford some justification for respondent's contention, nevertheless what was said therein must be taken as applicable to the facts there involved and which was the subject considered. In the Brookes case the question discussed was the power of the city council, under an act in which there was no provision for notice and hearing to persons whose lands were affected, to create a sewer district and construct sewers therein from the proceeds of bonds issued upon the lands in the district. It was held that, under the constitutional provision that no person shall be deprived of his property without due process of law, the legislature could not confer upon the city council authority to create local assessment districts for taxation to pay for local improvements without some provision for notice to persons interested and a hearing upon the question of the limits of the district and as to whether their property would be benefited by the improvement. The case of *People* v. *Van Nuys Lighting Dist.* was an action in *quo warranto* to determine the validity of the organization of a lighting district under the act of March 20, 1909 (Stats. 1909, p. 551), which authorized unincorporated towns and villages to establish and maintain systems of street lighting on public highways. The district as organized comprised about 50,000 acres of land within which were two unincorporated towns: that of Van Nuys, occupying about 640 acres and having 350 inhabitants, and the other the town of Owensmouth,

covering 320 acres and having a population of 100 inhabitants; the balance of the territory consisting of farming and grazing lands and unproductive mountain land. The court construed the act as authorizing the formation of lighting districts only within the limits of an unincorporated town or village, and excluded from the district a tract of 4,500 acres of land owned by the relator and devoted to farming and not inhabited as a village. In discussing the curative act of May 29, 1915 (Stats. 1915, p. 939), it held the same could not operate to validate previous proceedings of the district for the reason that no provision was made in the act for notice and hearing as to benefits to be derived from including lands in such local improvement district, without which the proposed tax would constitute a taking of property without due process of law. Neither case involves the determination of questions the decisions of which support respondent's contention. While in both cases it is true the acts contemplated the levy of a tax upon all the property in the district, nevertheless such tax was for local improvement and upon the theory that the property in the district would be benefited by the local improvement, and as to which, supported by all the authorities, the owners were entitled to a hearing. In neither case was the question of benefits considered as a basis for taxation, nor was there any discussion had of the question as to the power of the board or council in such cases to levy a *general* tax upon *all* the property in the district.

[3] In our opinion, the power of the board of supervisors to annex the territory of an intermediate school district to a high school district is measured by section 1734, above quoted; that since it requires no notice to be given residents or owners of property in the district annexed, none is necessary; and that the board of supervisors has discretionary power to act whenever it appears that the provisions therein contained have been fully complied with.

In the issuance of high school bonds, section 1745 of the Political Code provides that the notice shall be published not less than once a week for three successive weeks; that the first publication of said notice shall be not less than twenty-one days before said election. In the instant case it appears that the bond election was held on April 16, 1920. The first publication of notice thereof was made on March

26, 1920, and it was published on each succeeding day thereafter up to and including April 15th. The notice was therefore published not less than once a week for three successive weeks, and the first publication made on March 26th was twenty-one days *before* the day of such election. The language of the statute is almost identical with that construed in the case of *Cosgriff* v. *Board of Election Commrs.*, 151 Cal. 407 [91 Pac. 98]. We regard the decision in that case as determinative of the question.

It appears that bonds numbered 1 to 8 matured on June 1, 1921, and, since that date has passed, respondent insists that such bonds constituting overdue paper may not now be issued. We cannot assume that such bonds will be included in the proposed sale, nor that, if so included, other than the principal and interest accrued at maturity will be paid.

The notice of election, in the language of section 1745 of the Political Code, specifies the purposes for which the bonds, $200,000 in amount, were to be voted, which statute also provides that the bonds for the purposes stated may "be united and voted upon as one single proposition." There is no merit in the contention that the notice specified a dual purpose for which the bonds were to be issued, since the whole sum voted was for the purposes named in the notice. Moreover, were this not the case, the alleged irregularity is cured by the validating act designated chapter 336 and found in Statutes of 1921, page 456.

Neither can we assume, in the absence of any showing of such fact, that the amount of the bonds voted is in excess of the amount of five per cent upon the preceding equalized assessment of the district. On the contrary, the presumption is that the bonded indebtedness of the high school district, including that of the bonds proposed to be issued, is, as required by law, not in excess of five per cent of the total assessed valuation of all taxable, nonoperative property therein.

Our conclusion upon the points discussed renders it unnecessary to consider other questions presented.

The alternative writ of mandate heretofore issued is made peremptory.

Conrey, P. J., and James, J., concurred.