## No. 16,799.

SCHOOL DISTRICT No. 3, IN EL PASO COUNTY *v.*
PERRY, SUPERINTENDENT OF SCHOOLS ET AL.
(250 P. [2d] 1010)

Decided November 17, 1952.

Mr. GEORGE M. GIBSON, for plaintiff in error.

Mr. JAMES F. QUINE, JR., for defendant in error Perry.

Messrs. FOARD BROTHERS, for defendant in error Janitell.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff and defendants in error were defendants.

The controversy arose from an attempt on the part of defendants to create a new school district out of territory included within existing School District No. 3 in El Paso county, and constituting approximately one-fourth of the area within the boundaries of said district.

December 11, 1950, defendant Janitell presented to defendant Perry, county superintendent of schools, a petition, bearing the requisite number of signatures, to organize a new school district out of part of the territory of plaintiff. December 26, 1950, defendant Perry, as such superintendent, in writing and without a formal hearing, directed defendant Janitell to notify each elector residing in the proposed new school district of an election to be held on January 24, 1951, in order that the wishes of the residents of said proposed district might be ascertained.

January 19, 1951, plaintiff filed its complaint in the nature of certiorari, wherein it prayed that the order of defendant Perry in directing defendant Janitell to call such election be reviewed, and that there be a stay of proceedings. This relief was sought on the ground that the statutes of Colorado, pertaining to formation of new school districts from existing districts, require that the county superintendent of schools make a finding that, in his or her judgment, the interests of the districts affected by the proposed change will be best promoted thereby. The contention of counsel for the school district in this connection was that, since no hearing on this

question ever was had, defendant Perry exceeded her jurisdiction and abused her discretion in directing defendant Janitell to call an election, and therefore the entire proceeding was a nullity.

In the alternative, in the event that the review in the nature of certiorari did not lie, plaintiff prayed that defendants be enjoined from going forward with the formation of thè proposed new school district. This relief was sought on the theory that any finding by the county superintendent, that the best interests of the school districts affected by the proposed change would be served, could not be supported by the undisputed facts.

January 19, 1951, the district court issued its order directing defendant Perry to make a return of her acts in connection with the proposed new school district, and commanding that each of the defendants desist from further proceedings in the matter until the action was determined. This order was subsequently amended to permit the holding of the election, but in all other respects the stay of proceedings was effective.

Trial was had March 8, 1951, and April 2, 1951, judgment was entered denying the relief sought by plaintiff, and from this adverse judgment plaintiff brings the cause here for review by writ of error.

School District No. 3, plaintiff in this action, borders Camp Carson on the east. It is approximately thirty-nine miles from the west to east boundaries, and is approximately four and one-half miles in width. It operates three schools. The Tructon school is in the eastern part, the Drennan school is in the center portion, and the Widefield school is in the western area of the district.

The total assessed valuation of all taxable property situated in the district is $1,214,140.00. Of this total in assessed valuation, the area within the boundaries of the proposed new district contains property with an assessed valuation of $1,038,530.00. If the proposed new district is created, the three-fourths part of the district

as presently constituted which would remain, would include property with an assessed valuation of only $175,-610.00. All railroads, the gas transportation pipe lines of the Interstate Gas Company, and the major portions of the wires of Western Union and the Mountain States Telephone and Telegraph Company would lie within the boundaries of the new district.

By custom of long standing, one director of the school district has been selected from each of the three school communities included within the district. The central and eastern school communities have comparable school facilities, each consisting of a four-room schoolhouse, four teachers, one janitor and three bus drivers. In 1951, the Tructon school had forty-seven students, and the Drennan school had an enrollment of thirty-six students. The Widefield school, at the westerly end of the district, has a two-room building, three teachers, one janitor, one bus driver, with a 1951 enrollment of seventy students. Eighteen of their total enrollment had to be transported to Fountain, Colorado, for schooling because it was impossible to care for them in their own district. Due to the inadequate building, two teachers conducted classes in one room, at the same time. Every indication points to the probability that the number of pupils who will be residents of the Widefield area in the immediate future will be substantially increased, while in the central or eastern communities no increase is anticipated and a slight decrease in enrollment is probable.

It is apparent that the directors of plaintiff school district have been unable to function harmoniously in the interest of the whole district. No effort has been made to build adequate facilities for the Widefield area by a bond issue against the entire district. The record in this connection discloses that the conclusion was reached by defendant Janitell that such an undertaking would fail. He was satisfied that it would be opposed by the residents of the central and eastern school communities who

would not be directly benefited thereby. If the movement to sever the Widefield community should be carried out, about six-sevenths of the assessed valuation included within the whole district would be severed from liability for the support of the schools in the Drennan and Tructon areas.

In order that the responsibility may be placed where it belongs for the delays that have been brought about in this action, we direct attention to the fact that the case was docketed in this court December 20, 1951; the abstract of record was filed January 31, 1952; the brief of plaintiff in error was filed April 24, 1952; the answer brief on June 30, 1952; and the reply brief on August 15, 1952. The judgment of the trial court was entered April 2, 1951. Thus nineteen months have elapsed since the judgment was entered by the trial court, and during only three months of that period has the cause been at issue and ready for study and decision by this court.

We are bound to dispose of the action upon the record before us. In so doing we are not unmindful of the future educational needs of the Tructon and Drennan communities, nor are we in any sense approving the deplorable educational problem existing in the Widefield community. It is not within our province to suggest solutions of these difficulties. We can only pass upon the legality of the course pursued by those whose responsibility it is to solve them.

The statute upon which defendants rely as authority for the proceedings instituted by them is section 61, chapter 146, '35 C.S.A. This statute sets out the steps to be taken for the organization of a new school district out of a portion of one or more existing districts, the first step being the filing of a petition with the county superintendent. The statute then provides, inter alia: "If, in the judgment of the county superintendent, the school interests of the districts affected by the proposed change will be best promoted by said change, he shall direct some one of the petitioners, who

is a legal voter, to notify each elector residing within the districts so to be formed * * *." Our research discloses that the use of the word "districts" in that portion of the statute above quoted which reads "within the districts so to be formed," is an error in compilation of the statute. The correct word as embodied in the act is "district."

It is contended by counsel for plaintiff school district, that the duty imposed upon the county superintendents to determine whether the school interests of the "districts affected by the proposed change will be best promoted by said change," calls for the exercise of a quasi-judicial function; that it involves an inquiry into facts; that a formal finding must be made by the superintendent that, in her judgment, based upon supporting facts, the best interests of the affected districts will be promoted by the change; and that no such finding or judgment can be reached without notice to those whose interests might be adversely affected and without a hearing in which the claims of such parties might be presented for the consideration of the superintendent. These contentions are so closely related as to make separate treatment unnecessary.

Questions to be Determined.

*Where a statute fixes procedures to be followed in the formation of a new school district out of a portion of an existing district, and, upon the filing of a petition for that purpose, makes all subsequent action in furtherance of the petition contingent upon the judgment of the county superintendent of schools that the school interests of the districts affected will be best served by the change; may said official reach a conclusion and pass judgment upon that question without notice of any kind to the school board of the district to be divided, or to any of the residents thereof, or without a hearing concerning the facts pertinent to that question?*

The question is answered in the negative. In *People ex rel. v. Van Horn,* 20 Colo. App. 215, 77 Pac. 978, in

which the same statute was being considered, we find, inter alia, the following pertinent language:

"The only *quasi*-judicial duty imposed upon a county superintendent by the above statutes, is to determine whether the school interests of the districts affected by the proposed change will be best promoted by such change, as the discharge of this duty involves looking into facts and acting upon them as his judgment and discretion may dictate."

\* \* \*

"Mills' Ann. Stats., secs. 3991, 3992, *supra,* provide the only method for the formation of new school districts, and it will be seen, that after the county superintendent has determined that the school interests of the districts affected will be best promoted, the sole power to determine the question as to whether or not the district shall be organized, and the boundaries of the district, has been placed by the legislature in the electors of the proposed district."

█ It is clear from the above quotation that the duty imposed upon the county superintendent, to pass judgment on the question of whether the best school interests of the entire district will be promoted by the severance of the area included· in the proposed new district, involves the exercise of a quasi-judicial function as distinguished from a ministerial act. Whenever a· statute places upon any official the duty of looking into facts and acting upon his judgment based thereon, not in a way specifically directed by the statute, but pursuant to the exercise of a sound discretion based upon the facts into which inquiry is made, the function is quasi-judicial. We are satisfied ·that such a function cannot properly be carried out without a reasonable notice to those whose status, duties, rights and obligations will be . affected by the determination to be made. Neither can such quasi-judicial function be exercised without a hearing at which interested parties may offer evidence bearing upon the question to be determined.

In the instant case, by the proposed amputation of the western one-fourth of the school district, approximately six-sevenths of the assessed valuation of the entire district would be removed from the corpus of the district. No court of justice could properly hold that this major operation could lawfully be performed upon the plaintiff school district without notice to it, or without an opportunity for it to be heard at some point in the proceedings. There is but one measure of protection provided by the statute to the residents of that portion of a school district which shall remain after a new one has been created out of a portion of the existing district. That safeguard is that, no division shall become effective unless the county superintendent, in effect, gives approval by finding that the creation of the new district will promote the best school interests of the district. This means the best interests of the whole district as originally constituted. If the county superintendent once makes this determination, the sole power to complete the process which results in division has been placed by the legislature in the electors of the proposed new district. They alone are permitted to vote upon the question. Thus it is clear that if the directors of the school district from which a community desires to withdraw, and the parents of children who are the taxpayers thereof, are to have any voice whatever in determining whether there shall be a severance, their only opportunity is to have reasonable notice of the pendency of the petition, and a hearing, before the superintendent can pass valid judgment on the quasi-judicial question concerning the best interests of the school district.

 Counsel for defendants argue that notice and hearing are unnecessary because no specific provision therefor is made a part of the statute. Even though no specific direction concerning notice and hearing is set forth in a statute which commands the exercise of a quasi-judicial function by an administrative official, it does not follow that said function can be exercised with-

out notice to those whose rights are to be affected, and without an opportunity for them to be heard. Necessarily, reasonable notice, and a hearing, are implied from the statute under consideration, which commands performance of a quasi-judicial function by an administrative officer. *Lloyd Sabaudo Societa Anonima per Azioni v. Elting,* 287 U.S. 329, 53 Sup. Ct. 167, 77 L. Ed. 341; *Paulsen v. Portland,* 149 U.S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637.

It follows from the foregoing that the order executed by defendant Perry, authorizing a vote by the electors of the Widefield area upon the question of whether a new school district should be formed, was, and is, void and of no effect, and all notices and elections held under the authority of said order are null and void.

The judgment is reversed.