MARATHON OIL COMPANY, a Corporation, a Taxpayer in and of School District No. 1 and Special High School District No. 3 in the County of Big Horn and State of Wyoming, Appellant (Plaintiff below),

v.

Ford M. WELCH, Assessor, County of Big Horn, State of Wyoming, June Lamont Smith (Formerly June Lamont), Treasurer, County of Big Horn, State of Wyoming, the District Boundary Board of the County of Big Horn, State of Wyoming, Appellees (Defendants below).

No. 3100.

Supreme Court of Wyoming.

March 21, 1963.

J. W. Gee, Findlay, Ohio, and James A. Zaring, Basin, for appellant.

John O. Callahan, Basin, and J. D. Fitzstephens, Cody, for appellees.

Before PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Marathon Oil Company, formerly The Ohio Oil Company, as appellant challenges action taken by a school district boundary board to change the boundaries of two school districts. The lands involved in the change contain 17 producing oil wells, all of which are owned by Marathon. In fact, that company claims to own approximately 81 percent of the total property evaluation transferred from one district to the other.

It is conceded the interest of Marathon is that of a taxpayer, and the change in boundaries, if valid and permitted to remain in effect, will require such taxpayer to pay substantially more in taxes than it would pay if the boundaries remained as they were.

As a result of a joint petition previously filed by the respective boards of education of School District 28 and School District 1 in Big Horn County, the District Boundary Board of Big Horn County held a special meeting March 29, 1960 to consider the request of the boards of education of these two districts for a change in boundaries, in order to give to District 28 a part

of the Byron oil and gas field from District 1. At the meeting, the boundary board adopted the proposal of the petition and the boundaries of the two districts were changed accordingly.

Marathon subsequently brought this action against the county assessor, the county treasurer and the boundary board to enjoin the collection of all taxes arising out of the change in boundaries. The district court upheld the validity of the change, and the taxpayer now seeks a reversal of its judgment.

### Appellant's Claim

Appellant has not claimed the boundary board is without power to make the change which it did make. But it is claimed the board's action is void because of lack of a formal notice and hearing. In support of this contention, counsel for appellant cites School District No. 9, Fremont County v. District Boundary Board In and For Fremont County, Wyo., 351 P.2d 106; and School Dist. No. 3, El Paso County v. Perry, 126 Colo. 443, 250 P.2d 1010.

We have carefully reviewed these cases and find in them very little, if any, support for counsel's contention. The District No. 9, Fremont County, case dealt with the need for substantial evidence upon which the decision of the boundary board could reasonably have been based. Nothing was said, however, which would imply that a formal notice and hearing for property owners and taxpayers would be required.

In the Colorado case of Dist. No. 3, a change in boundaries was made by the county superintendent of schools without notice to the school district from which property was being taken and without an opportunity for it to be heard. Although there was an adjudication to the effect that the affected school district had a right to be notified and heard on the question as to whether the best interests of the schools would be promoted by a change in boundaries, nothing was said which would indicate that the notice and hearing for this determination should extend to property owners and taxpayers. Actually, by statute in Colorado, a vote of the electors was required following a determination by the superintendent of schools to propose a change in boundaries.

### The Matter of Notice

The powers and duties of a boundary board, insofar as pertinent to the instant case and as they existed on March 29, 1960, were spelled out in § 21–211, W.S.1957, in the following language:

"The county superintendent of schools, the county treasurer, and the board of county commissioners shall constitute a board for laying off their county into convenient school districts, such board to be styled 'the district boundary board.' Said board by a majority vote may divide the county into school districts, may alter and change the boundaries of the districts so formed from time to time and may at any time consolidate entire districts or portions of districts, when, in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions * * *."

There is no statutory requirement for a notice of meeting in connection with meetings of a district boundary board, and appellant does not contend the statute under which the boundary board proceeded is unconstitutional. In fact, appellant asserts the statute unquestionably is constitutional. Indeed, the validity of such legislation was recognized by this court in Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, 539, wherein it was said the establishment of such districts and the change of boundaries is a legislative function which the legislature has delegated to a district boundary board in each county, and it is not questioned this may be done.

 In the absence of constitutional restrictions, the question as to whether local boards may exercise their delegated power to change school district boundary lines, without notice and a hearing for property

owners, is a matter solely for the determination of the legislature. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, 551–553; In re Annexation of Common School Dists. Nos. 18 & 21 to Independent School Dist. No. 1, Minidoka County, 52 Idaho 363, 15 P.2d 732, 733; Antelope Valley Union High School Dist. of Los Angeles County v. McClellan, 55 Cal.App. 244, 203 P. 147, 149; 47 Am.Jur., Schools, § 18, p. 310.

■ Generally, statutes authorizing subordinate boards to create and alter school districts are not invalid for failure to require a notice and hearing, and a hearing is not necessary where not required by statute. Perkins v. Lenora Rural High School Joint Dist. No. 1, Norton and Graham Counties, 171 Kan. 727, 237 P.2d 228, 232–233; Prosper Independent School Dist. v. County School Trustees, Tex.Com.App., 58 S.W.2d 5, 6; 78 C.J.S. Schools and School Districts § 42, p. 731.

The Supreme Court of Oklahoma had occasion to say, in Dowell v. Board of Education of Oklahoma City, 185 Okl. 342, 91 P.2d 771, 775, that a school district is a subordinate agency of the state, and the legislature can abolish or change the boundaries of school districts without consulting the inhabitants.

■ It has been held in this jurisdiction that no person can have a vested right in a particular school district, and the amount of taxes to be paid by taxpayers is not a criterion, or at least a controlling criterion, in determining whether the annexation of territory to a school district is reasonable or not. Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, supra, at 260 P. 541. See also Pritchett v. County Board of School Trustees, 5 Ill.2d 356, 125 N.E.2d 476, 478; School Dist. No. 3 of Town of Adams v. Callahan, 237 Wis. 560, 297 N.W. 407, 414, 135 A.L.R. 1081; and Anderson v. Peterson, supra.

The appellants in School Dist. No. 3 of Town of Adams v. Callahan, supra, were school districts and individual property owners and taxpayers. Concerning them the court said:

"* * * * no property rights on the part of the districts or any of the appellants are considered involved in the consolidation of such districts. Consequently, neither the absence of a statutory provision requiring notice to be given of a hearing before the superintendent, nor the absence of any such notice to appellants renders the statute unconstitutional or the orders under review invalid on the ground of a want of due process. * * * *"

### Board's Discretion

In Pritchett v. County Board of School Trustees, supra, the Supreme Court of Illinois said the sufficiency of notice, or lack of it, is purely a matter of legislative determination; however, it may be a subject for judicial review as regard to whether the county board has sufficiently apprised itself of the situation at hand before carrying out its legislative directive.

■ This statement, we believe, affords the answer to our decision in the case before us. The matter of requiring or not requiring notice is purely a matter of legislative determination. But it is indeed a subject for judicial review as regard to whether the county board has sufficiently apprised itself of the situation at hand before carrying out its legislative directive.

Thus it was, in the District No. 9, Fremont County, case that Justice Parker, at 351 P.2d 111, said a district boundary board must have before it sufficient information upon which it may properly find that it is to the best interests of the people in both the annexed and annexing areas. He also pointed out that information from which the welfare and interests of all of the people concerned may be determined is a prerequisite to action of any administrative board. The decision in that case was predicated squarely upon a lack of sufficient information from which it could

reasonably be determined that a change should be made.

This brings us then, in the case at bar, to a review of the record in order to determine whether the boundary board of Big Horn County had sufficient information upon which to base its decision for a change. However, before reviewing the specific information upon which the board appears to have acted, we think it will be helpful to examine briefly the extent of the board's discretion.

■ We have repeatedly said the courts are warranted in setting aside action of an administrative agency only where its action is arbitrary or fraudulent or where there is an illegal exercise of discretion; and the burden of proving arbitrary, illegal or fraudulent action is on the complainant. Thompson v. Conwell, Wyo., 363 P.2d 927, 928; Rayburne v. Queen, 78 Wyo. 359, 326 P.2d 1108, 1111; Mahoney v. L. L. Sheep Company, 79 Wyo. 293, 333 P.2d 712, 716; Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 526; Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, supra, at 260 P. 539.

■ Otherwise stated, if the board's discretion is properly exercised, its decision is final and not subject to interference by the courts. 47 Am.Jur., Schools, § 19, p. 311. See also Annotation 135 A.L.R. 1096, 1102.

### Sufficiency of Information

Regarding the question as to whether in the case at bar there was sufficient information to justify the board's decision to make the proposed change, we think consideration can be given to the fact that both of the school districts affected were petitioners and helped to bring about the decision. Thus, the problem involved in the Colorado case of School Dist. No. 3, El Paso County v. Perry, 126 Colo. 443, 250 P.2d 1010, upon which appellant relies, is not involved in this case. As indicated above, the Colorado case had to do with the lack of an opportunity for the adversely affected school district to be heard.

Evidence introduced in the trial of the instant case reveals that minutes of the meeting in question were before the court. These minutes indicate that a written petition had been filed with the county boundary board by the two school districts, and that a map was presented by the county assessor showing the area to be transferred from District 1 to District 28 and showing the location of oil wells in the area concerned. The minutes state there was a short discussion and an examination of the map, after which a motion was unanimously carried for the requested change.

Ample testimony was presented to the trial court to indicate members of the board were familiar with the situation of each district and with the problems involved. According to the testimony, there was mention of the fact that school children were not adversely affected by the change; there was evidence as to the needs of the schools; there was evidence as to the assessed valuations involved; and there was evidence as to the relative size of the districts and relative number of pupils in each district.

It appears rather strongly from all of the evidence that the main purpose of the change was to equalize to some extent the valuations of the two districts, both of which had approximately the same number of children to educate. The testimony as a whole indicated these various pertinent matters had been previously discussed and were further discussed at the March 29, 1960 meeting. Also, some adjustment and alteration in the actual boundaries of the proposed change were worked out at the meeting itself, in order to better accomplish the result which was being sought.

As further proof that the change in boundaries was not made thoughtlessly or arbitrarily, testimony was introduced indicating the voters of School District No. 1 had voted on the proposition as to whether its district should give approximately two million dollars in assessed valuation to District 28. This referendum question was submitted at the time of a

regular bond-issue election, and approval for the change was given by a vote of 207 to 4.

Adopting some of the logic and language employed in the Chicago, B. & Q. R. Co. case, we can say the school district trustees and the district boundary board were confronted with a stern necessity, which could be met in no other way as far as the record discloses. The real question is as to whether the rights of appellant as a taxpayer so overshadow the necessities involved as to require us to say the district boundary board acted arbitrarily and oppressively, and that it should have considered the interests of the school children of secondary importance.

■ The evidence disclosed by the record before us is amply sufficient, under the circumstances of this case, to justify the conclusions of the trial court to the effect that plaintiff failed to sustain the burden of proof upon it and failed to establish that the action of the boundary board was arbitrary, an abuse of discretion or fraudulent.

### Overlapping of Districts

Appellant complains of an overlapping in territorial boundaries between School District No. 28 and the Byron High School District. Since District 28 maintains grades one through 12 at Cowley, Wyoming, and the Byron High School District maintains grades 9 through 12 at Byron, Wyoming, it is argued the same taxable property would be subject to levy for the purpose of supporting a district operating grades one through 12 and also a high school district operating grades 9 through 12.

It is admitted the levy board and county assessor have limited District 28's taxing ability, on the property transferred, to 13½ mills—the limit for elementary school purposes. See Ch. 217, § 2, S.L. of Wyoming, 1961. Also, the Byron High School District has actually levied under the mill-levy limit for high school purposes. See Ch. 217, § 1, S.L. of Wyoming, 1961.

Thus, the levy to which Marathon's property has been subjected is under the statutory limitation for both elementary school and high school purposes.

Counsel argues, however, that there is no authority for the action of the taxing officials and at some time in the future Marathon's property could be subjected to double taxation for high school purposes and to a total levy in excess of the statutory limits. This argument overlooks the fact that Art. 15, § 13, Wyoming Constitution, prohibits the levying of any tax, except in pursuance of law. And hence, taxing officials would be debarred in any case from levying or collecting taxes in excess of the statutory limitations.

■ As stated in 43 C.J.S. Injunctions § 21, p. 436, an injunction will not lie to restrain one from doing what he is not attempting and does not intend to do, and a fortiori an injunction will not issue where it is shown defendants are without power to accomplish the thing sought to be enjoined. See Cantou v. Walker, 61 Wyo. 56, 154 P.2d 530, 534; Aerated Products Co. of Philadelphia, Pa. v. Department of Health of New Jersey, 3 Cir., 159 F.2d 851, 854; and Davis v. Upshur County, Tex.Civ.App., 191 S.W.2d 524, 525.

■ It is not uncommon in Wyoming for a high school district to be superimposed over an ordinary school district. This was recognized in Ericksen v. School Dist. No. 2 of Natrona County, 67 Wyo. 216, 217 P.2d 887, 891. The court in that case said the governing authorities of the high school district and the governing authorities of the ordinary school district must cooperate to see that the limit in question was not exceeded.

### Decision

■ Although there was some evidence indicating employees of Marathon knew of the meeting of the district boundary board on March 29, 1960, and that the company could have been heard if it had chosen to be, the district court found no formal

notice of meeting was given to the applicant for injunctive relief. Its judgment was based upon the legal conclusion that notice to and a hearing for the individual taxpayer was not required. We agree with this conclusion and we find no other basis for granting the relief sought. We therefore affirm the judgment of the trial court.

Affirmed.

Mr. Chief Justice PARKER (dissenting).

My inability to adopt the views expressed in the principal opinion makes it incumbent on me to perform the least pleasant of judicial tasks, the justifying of a tenet which though sincerely believed cannot be the law of the jurisdiction.

To begin, the assumption here that the statute in issue, § 21-211, W.S.1957, has on the strength of Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, 539, been held constitutional is unwarranted. As is reflected by both that opinion and the briefs on which the cause was submitted, the issue of constitutionality was not directly before the court. Judge Blume's pronouncement on the subject was at most peripheral when he said, 260 P. at 539:

"* * * While the establishment of such districts and the change of boundaries therein is a legislative function, the Legislature has delegated the duties in connection therewith to a district boundary board in each county, and it is not questioned that this may be done. * * *"

In that connection, it is significant to observe two other statements which he made, 260 P. at 538 and 540:

"* * * The meeting of the board was then adjourned to April 6, 1925, for the purpose of giving notice to the parties interested so they might appear and state their objections. * *

"* * * In these various matters, the welfare and interests of the district and of the people thereof as a whole must necessarily be the determining factor in order to make the organization of districts possible at all. We cannot see why a different principle should apply in making changes in districts already organized. * * *"

The appellant here similarly has not challenged the constitutionality of the statute; the remarks of the court in the majority opinion are unjustified; and the question of constitutionality must remain open until it may be directly and properly raised in a cause before us.

In the present litigation the principal issue is the propriety of the boundary board's action taken without notice to citizens and taxpayers. In School District No. 9, in County of Fremont v. District Boundary Board In and For Fremont County, Wyo., 351 P.2d 106, this court said that even where there is no statutory requirement for notice of the proposed action in changing a school boundary that reasonable notice is nevertheless required to be afforded to interested persons. This definite and unambiguous rule must control until it is reversed, and it cannot be sidestepped as it has been here. In that case reference was made to School Dist. No. 3, El Paso County v. Perry, 126 Colo. 443, 250 P.2d 1010, in our neighboring state, which at that time by c. 146, § 61, 1935 Colo.Statutes, Annotated, provided:

"For the purpose of organizing a new district out of a portion of one or more old districts, the parents of at least ten children of school age residing within the limits of the proposed new district shall petition the county superintendent in writing * * *. If, in the judgment of the county superintendent, the school interests of the districts affected by the proposed change will be best promoted by said change, he shall [direct notification of each elector within the district to be formed of a meeting] * * * to determine the question of the proposed organization. * * *"

In that case counsel for plaintiff insisted that the superintendent's function was quasi-judicial and that a hearing was necessary in which the claims of interested parties might be presented. The court said, 250 P.2d at 1014:

"* * * it is clear that if the directors of the school district from which a community desires to withdraw, and the parents of children who are the taxpayers thereof, are to have any voice whatever in determining whether there shall be a severance, their only opportunity is to have reasonable notice of the pendency of the petition, and a hearing, before the superintendent can pass valid judgment on the quasi-judicial question * * *."

Subsequently, the Colorado statute was changed to read:

"* * * Upon the presentation of such petition the county superintendent shall fix a time for the hearing on the same and shall thereupon give written notice thereof to all districts affected * * *.

"If upon such hearing in the judgment of the county superintendent the school interests of all the existing districts affected by the proposed change will be best promoted by said change, he shall make a finding accordingly and shall [direct notification of meeting] * * *." Colo. Revised Statutes, 1953, 123–7–1.

It is said in the majority opinion:

"In the absence of constitutional restrictions, the question as to whether local boards may exercise their delegated power to change school district boundary lines, without notice and a hearing for property owners, is a matter solely for the determination of the legislature. * * *

"Generally, statutes authorizing subordinate boards to create and alter school districts are not invalid for failure to require a notice and hearing, and a hearing is not necessary where not required by statute. * * *"

If these statements contain all essential factors and are supported by the cases, they would, of course, dispose of the controversy, but as will be later pointed out, the exercise of delegated legislative authority is not to be lightly taken, and there are other aspects which demand attention.

At the inception, it may be observed that in general the encyclopedias and the cases on the subject indicate a wide divergence in the type of statute which deals with a change in school district boundaries and a consequent variance in opinions relating to them. This is illustrated by the cases cited in the majority opinion.

In Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, the plaintiffs, among other things, alleged the unconstitutionality of an "[A]ct to provide for the reorganization of school districts." In that case the court stated, 54 N.W.2d at 548:

"The synopsis of the Reorganization Act * * * shows that the legislature reorganized school districts upon the existence of certain facts. It laid down the policies and established the standards for such reorganization of school districts. * * * Public hearings were provided to ascertain the facts required for the organization of any proposed reorganization * *. Any reorganization plan is subject to the approval of the state committee. Then the plan is finally submitted to the electors of the district. * * * Clearly the act to provide for the reorganization of school district delegates only administrative power to the committees."

In re Annexation of Common School Dists. Nos. 18 and 21 to Independent School Dist. No. 1, Minidoka County, 52 Idaho 363, 15 P.2d 732, deals with a question as to the boards of supervisors exercising delegated power without notice, the

statute there giving power to make an annexation when certain conditions obtained. The court, 15 P.2d at 733, quoted Antelope Valley Union High School Dist. of Los Angeles County v. McClellan, 55 Cal.App. 244, 203 P. 147, 149:

"* * * In the absence of constitutional restrictions, * * * the question as to whether boards of supervisors may exercise such delegated power without notice is a question solely for the determination of the Legislature, and in its wisdom it has not required the giving of notice. * * *"

It was observed, however, 15 P.2d at 733, that in the case before them, "notice was given, and a hearing had with opportunity for appellant to protest."

Under the statute involved in Antelope Valley Union High School Dist. of Los Angeles County v. McClellan, supra, the board of supervisors had discretionary power to act when it appeared that certain provisions therein contained had been fully complied with, namely, a petition by the majority of the heads of families or a majority of the electors and verification of the petition signatures by the superintendent of schools.

In Perkins v. Lenora Rural High School Joint Dist. No. 1, Norton and Graham Counties, 171 Kan. 727, 237 P.2d 228, the statute (G.S.1949, 72–3514) read:

"Territory outside the limits of any rural high-school district, but adjacent thereto, may be attached to such high-school district for high school purposes, upon application being made to the rural high-school board by a majority of the electors of such adjacent territory, and upon the approval of said rural high-school board and the consent of the county superintendent of public instruction in whose county the main building lies * * *."

Plaintiffs claimed that the county superintendent should have given notice and held a hearing, but the court said, 237 P.2d at 233:

"* * * When such proceedings were initiated by a majority of the electors, only approval by the school board of the joint district and consent of the county superintendent of Norton County was required. * * *"

In Prosper Independent School Dist. v. Collin County School Trustees, Tex.Civ. App., 51 S.W.2d 748, 751, the court stated:

"* * * We think a public hearing of all interested parties is contemplated, so that the county trustees may determine their duty in the premises.

* * * We think also that by clear implication the statute requires notice of the date of the hearing to be given to all interested parties. Such construction of said section of the act in question is reasonable, and as it is a construction that removes any doubt as to the constitutionality of the act, it should be adopted, rather than a construction, though reasonable, which renders the legislative enactment of doubtful constitutionality."

In affirming this action, the commission of appeals, Prosper Independent School Dist. v. County School Trustees, Tex.Com. App., 58 S.W.2d 5, 6, said that the legislature had authority to change at will the boundaries and to provide the *mode* and agencies by which such change shall be effected.

Discussion of the cited cases should, perhaps, not be concluded without reference to School Dist. No. 3 of Town of Adams v. Callahan, 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1081, where the statute provided that: "The state superintendent is authorized, on his own motion, by order to attach districts with valuations of less than one hundred thousand dollars to contiguous districts [§ 40.30(1), Wis.Stat.1939]." The appellants contended that the power granted to the superintendent if quasi-judicial made the statute invalid because it failed to pro-

vide for a hearing. The majority opinion quotes that portion of the decision stating, "[For the reasons stated above,] no property rights on the part of the districts or any of the appellants are considered involved in the consolidation of such districts." It should be noted, however, that prefacing "the reasons stated above," is the comment, 297 N.W. at 414, "it is well established that the alteration or abolition of school districts *in such manner* and through such instrumentalities as the Legislature prescribes is not the taking of property nor does it deprive any person of his property within the meaning of the constitutional inhibitions in these respects." (Emphasis supplied.)

Many of the cases which deal with boundary board disputes have turned upon the question of constitutionality, not in issue in the present case, but they hold in effect that the procedure which was indulged in here, the summary changes of boundaries without an opportunity for hearing, were improper, usually on the thesis that there cannot be delegated to administrative agencies legislative functions unless reasonably clear standards are present to govern the exercise of the authority. State ex rel. Donaldson v. Hines, 163 Kan. 300, 182 P.2d 865; School District No. 39 of Washington County v. Decker, 159 Neb. 693, 68 N.W.2d 354; Nickel v. School Board of Axtell, 157 Neb. 813, 61 N.W.2d 566; 11 Am.Jur. Constitutional Law § 240; 73 C.J.S. Public Administrative Bodies and Procedure § 29. In Ruwe v. School Dist. No. 85 of Dodge County, 120 Neb. 668, 234 N.W. 789, 790, 791, the court said:

"* * * While the establishing of boundaries of public school districts for school purposes is a legislative function, the legislature may confer on public boards or courts judicial power to determine the facts and equities under which legislation authorizes changes in such boundaries. * * *

* * * * * *

"* * * Only such boundary changes can be made by the county officers 'as in their judgment will be just and equitable.' These terms and conditions imply duties and powers of a judicial nature. * * * Since there was no statutory provision for notice to those whose financial burdens would necessarily be increased by the exercise of judicial power, or for a hearing, the section violates the due-process clause of the state and federal Constitutions * * *."

This case was quoted with approval in Nickel v. School Board of Axtell, supra, and is discussed in Annotation, 135 A.L.R. 1096, 1097.

In a number of states, school district boundary changes are initiated by residents of the areas concerned and the final determination is subject to vote. In Wyoming under § 21–211 the entire authority is in the boundary board and the statute does not provide standards under which the board is to act nor but for the requirement of this court by interpretation is there provision for a hearing and notice to interested persons. In the present case there was no notice and no hearing providing opportunity for the appellant to present to the board relevant facts.

The judgment should be reversed.

Mr. Justice HARNSBERGER (concurring.)

The Chief Justice feels the principal issue in this case is the propriety of the boundary board's action taken without notice to citizens and taxpayers and says:

"In School District No. 9, in County of Fremont v. District Boundary Board In and For Fremont County, Wyo., 351 P.2d 106, this court said that even where there is no statutory requirement for notice of the proposed action in changing a school boundary that reasonable notice is nevertheless required to be afforded to interested persons.";

and concludes, "This definite and unambig-

uous rule must control until it is reversed, and it cannot be sidestepped as it has been here."

Inasmuch as I concurred in the opinion rendered in the *Fremont County* case but disagree completely with the learned Chief Justice's recollection as to what the opinion said, my own views on the subject must be stated.

The accurate quote from the Fremont County case opinion is,

"* * * *it has been held* that even where there is no statutory requirement for notice of the proposed action in changing a school boundary reasonable notice is required to be afforded to interested persons. * * * *" (Emphasis supplied.)

The difference is very material. The mere fact that in discussing decisions from other jurisdictions it was recognized that it had been held in some jurisdictions that a reasonable notice is required even in the absence of statutory provisions therefor, does not amount to this court's having accepted such holdings as being the law of this jurisdiction. Thus what was said in the Fremont County case falls far short of becoming a "definite and unambiguous rule" that must control this court until reversed. I did not so understand it when I concurred

in the former opinion and I do not now so understand it.

The most that may justly be gleaned from this court's opinion in the Fremont County case is that the boundary board acted arbitrarily in that when *acting as a boundary board* that board, as such, had nothing before it to justify the decision reached.

It might also be noted, however, that this court is committed by the decision of Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 266, 260 P. 537, 539, to the tenet that what has been delegated by the legislature to district boundary boards is a legislative function. In consequence decisions from jurisdictions, such as Colorado, which have held the function of boundary boards is judicial or quasi-judicial, are not at all helpful.

Notwithstanding what is now being said, I remain in complete agreement with the philosophy entertained by the Chief Justice, that all matters of public interest, concern, and nature should be publicly and openly considered, but as a judicial officer I have no right to inject my personal opinions and preferments into my official views as to the law. We must take the law as we find it, not as we may want it to be.

I therefore concur in the majority opinion.